COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| F.T. JAMES CONSTRUCTION, INC., | § | No. 08-20-00096-CV |
| Appellant, | § | Appeal from the |
| v. | § | 210th District Court |
| HOTEL SANCHO PANZA, LLC, and JORDAN FOSTER CONSTRUCTION, LLC., | § § | of El Paso County, Texas |
| Appellees. | § | (TC# 2019-DCV-0505) |

## **O P I N I O N**

Appellee Hotel Sancho Panza, LLC (the Hotel) filed suit against F.T. James Construction, Inc. (FTJC) over delays in the construction of the Courtyard Marriott Downtown/Convention Center hotel and meeting space in downtown El Paso. FTJC answered the lawsuit, made counterclaims against the Hotel, and initiated a third-party claim against one of its subcontractors, Jordan Foster Construction Inc. (Jordan Foster). In turn, Jordan Foster filed a counterclaim against FTJC, and subsequently, a third-party petition against the Hotel.

Just shy of one year after the Hotel initiated this lawsuit, FTJC moved to compel arbitration and abate the case, pursuant to what it views as a valid and enforceable arbitration clause in the contract between it and the Hotel. The trial court denied FTJC's motion to compel arbitration and

this interlocutory appeal followed. FTJC asks this Court to reverse the trial court's denial of its motion. We affirm.

## I. BACKGROUND

*The Project*

The Hotel hired FTJC to construct a Courtyard Marriott hotel and meeting space in downtown El Paso (the Project). The contract between the parties was entered on May 21, 2016. Among its terms, the contract provided for substantial completion of the Project within 420 days after commencement, and 30 days more for final completion. That timeline meant expected completion was by August 2017. The Project, however, was not completed within the time period called for in the contract. In the underlying suit, the parties dispute the cause of the delay. FTJC claims the delay resulted from multiple change orders submitted by the Hotel. Countering that argument, the Hotel claims delays resulted from "FTJC's failure to timely order materials, failure to properly process and approve change orders, and failure to schedule roof work." Provisions of the contract for the Project are relevant to this dispute.

*The Contract*

The agreement between the parties was titled "Cost of the Work Plus a Fee with a Negotiated Guaranteed Maximum Price Construction Agreement between Owner and Builder." The architect on the Project was identified on the first page of the agreement as being Mitchell Carlson Stone, Inc. (hereinafter referred to as MCS or the Architect). The second page of that agreement listed eight documents that, together with the agreement itself, constituted the "Contract Documents." The first document listed was titled, "AIA Document A201-1997 edition of the General Conditions of the Contract for Construction," published by the American Institute of Architects.

2

Several of the provisions in Document A201-1997 describe a multi-step dispute resolution process included within the parties' agreement. The first of these provisions defined the term "claim" as "a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract." Also included in the definition of the term "claim" is "other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract." Claims, as that term is defined, were to be initiated by written notice to the Architect and the other party. Also, it must have been "initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later.

Claims were to be referred initially to the Architect for decision. After the Architect's initial decision, or thirty days after the submission of the claim to the Architect if no decision was made, claims were then subject to mediation as a condition precedent to arbitration or the initiation of legal or equitable proceedings. Claims not resolved by mediation were then subject to arbitration. A demand for arbitration was to be made within a reasonable time after any claim had arisen.

*Claims by the Hotel, FTJC, and Jordan Foster*

On February 6, 2019, the Hotel initiated litigation by filing its original petition against FTJC. The Hotel's petition alleged that the Project was not completed on time due to a number of failures by FTJC. It also alleged that the Project suffered serious concrete defects, among other deficiencies claimed. On March 11, 2019, FTJC filed its original answer and a counterclaim against the Hotel, along with a third-party claim for breach of contract against Jordan Foster, a concrete subcontractor on the Project. Against the Hotel, FTJC asserted a claim of breach of

3

contract, seeking to foreclose on a mechanic's lien in the amount of $1,900,000.[1] As for the third-party claim against Jordan Foster, FTJC also asserted a breach of contract claim against it, and sought indemnification in the event the Hotel established there were concrete deficiencies on the Project. With its answer to FTJC's third-party claim, Jordan Foster, in turn, filed a counterclaim against FTJC for breach of contract and quantum meruit. Months later, Jordan Foster filed a third-party petition against the Hotel also seeking to foreclose on a mechanic's lien. The Hotel answered Jordan Foster's claim and filed its own counterclaim against Jordan Foster, alleging the subcontractor's lien claim against the Hotel was improper. Responding to the initial discovery requested by FTJC, Jordan Foster served 53,390 pages of documents on all parties to the lawsuit. The trial court signed the original scheduling order on May 8, 2019, initially setting the case for trial on June 5, 2020. On August 1, 2019, the Hotel served its first set of requests for admissions to FTJC.

*Jordan Foster and FTJC's Arbitration Demands*

FTJC first demanded arbitration in a letter to counsel for the Hotel, dated September 23, 2019. The letter said, "F.T. James Construction, Inc. hereby demands arbitration pursuant to the Arbitration Clause contained in the General Conditions." On September 25, 2019, the Hotel conducted two depositions solely on the issue of arbitration. The first deposition was of Francisco Licon, a project manager for third-party defendant Jordan Foster. The second deposition was of Frank James, the owner of FTJC. During Frank James' deposition, he testified that he did not know whether FTJC was making a demand for arbitration; that he did not know if there was a right to arbitration in the contract between FTJC and the Hotel; that he did not know if FTJC had a

---

[1] FTJC's counterclaim lists the amount of the mechanic's lien as "no less than $1,900,000.00." In their brief before this Court, it identifies the exact amount of $1,963,584.45.

4

preference that the dispute be resolved in the court system or in arbitration; and that he did not know of any concern about litigating the dispute in the court system.

On November 11, 2019, Jordan Foster filed an amended motion to compel arbitration.[2] The motion included a standard subcontract form agreement, entered June 10, 2016, between Jordan Foster and FTJC. Jordan Foster's motion to compel arbitration sought to send the entire case to arbitration based on arbitration clauses found in the contract between it and FTJC, and in the purported contract between FTJC and the Hotel. Jordan Foster's motion to compel arbitration was opposed by the Hotel, but not by FTJC. The Hotel's opposition was based primarily upon the fact that there was no direct agreement to arbitrate between Jordan Foster and the Hotel. On December 20, 2019, by written order, the trial court denied Jordan Foster's motion to compel arbitration.

Meanwhile, on November 12, 2019, FTJC sent a letter to MCS—the Project architect— indicating it sought to submit the dispute for resolution in accordance with the alternative dispute resolution procedure outlined in AIA Document A201-1997. When MCS did not respond, FTJC advanced to the next step of the process, demanding mediation with the Hotel, by letter dated December 20, 2019. On January 7, 2020, the Hotel's counsel sent a letter to FTJC's counsel indicating the letter was intended as a response to FTJC's letter to MCS, dated November 12, 2019. Counsel for the Hotel informed FTJC that MCS had been retained as an expert witness in the lawsuit. Counsel stated, "[o]n October 2, 2019, I met with Keith Carlson and Grant Fisher for an in-depth discussion of the case; and an engagement letter was fully executed as of October 29, 2019." In closing, the letter indicated the Hotel contended that FTJC had waived any right under

---

[2] The appellate record does not include any previous motion to compel arbitration filed by Jordan Foster or any other party.

5

the contract to have MCS "decide the validity" of any claims asserted between the parties; and finally, to the extent certain claims were mentioned in FTJC's letter of November 12, those claims had already been determined by the Architect. After all parties agreed to a continuance, the trial court reset the trial date for December 4, 2020.

On January 29, 2020, FTJC filed its own motion to compel arbitration. Attached to this motion, FTJC included several exhibits including an affidavit of Frank James asserting the exhibits were true and correct copies; an exhibit B, identified as copies of pages 1 and 2 of a "Cost of Work Plus Fee With a Negotiated Guaranteed Maximum Price Construction Agreement Between Owner and Builder dated May 21, 2016"; and an exhibit C, identified as a copy of "General Conditions of the Contract of Construction AIA Document A201-1997."

In response to FTJC's motion, the Hotel argued that FTJC did not provide the trial court with an authenticated arbitration agreement and there was no meeting of the minds on an agreement to arbitrate between itself and FTJC. The Hotel also raised the defenses of waiver and the impossibility of complete relief amongst the parties through arbitration. In February, while the parties awaited a hearing on FTJC's motion to compel arbitration, depositions on written questions were noticed and cross-questions were propounded on a number of other subcontractors related to the Project. On February 26, 2020, the trial court held a hearing on the motion to compel, and signed an order denying said motion on April 1, 2020. The trial court did not enter findings of fact or conclusions of law along with its order denying the motion.

## II. ISSUES ON APPEAL

FTJC raises two issues on appeal: first, it contends the trial court erred in failing to compel arbitration; and second, it further contends the trial court erred by concluding that at least one of the defenses raised by the Hotel was valid. Raising three arguments in response, the Hotel first

6

contends that FTJC failed to establish the terms of the parties' contract by offering "scant evidence" at the hearing on its motion to compel arbitration; second, the Hotel contends that, even if an arbitration clause was part of the parties' contract, FTJC impliedly waived any right to arbitrate by extensively engaging in the litigation process; and third and finally, the Hotel contends the record establishes under these circumstances that an arbitration cannot afford complete relief to the parties.

## III.  STANDARD OF REVIEW

The denial of a motion to compel arbitration is reviewed for an abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018); *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008). In doing so, we defer to the trial court on factual determinations that are supported by the evidence but review its legal determinations de novo. *Henry*, 551 S.W.3d at 115. Here, the trial court did not issue findings of fact or conclusions of law to explain its denial of the motion to compel arbitration. We must, therefore, uphold the trial court's decision on any appropriate legal theory urged below. *See Bonded Builders Home Warranty Ass'n of Texas v. Rockoff*, 509 S.W.3d 523, 531–32 (Tex. App.—El Paso 2016, no pet.). Because the trial court would err if it denied a motion to compel arbitration on a ground not raised by the resisting party, we may affirm the trial court's refusal to compel arbitration only if one of the grounds presented by the resisting party is valid. *APC Home Health Servs., Inc. v. Martinez*, 600 S.W.3d 381, 389 (Tex. App.—El Paso 2019, no pet.).

At the outset, we particularly note in their briefing of this appeal, the parties heavily dispute whether or not FTJC proved the existence of an agreement to arbitrate based on the record evidence presented to the trial court. FTJC contends it not only proved the existence of such agreement, but also that it proved the parties' dispute fell within the scope of that agreement. The Hotel responds,

7

however, that FTJC presented almost no evidence at the motion to compel hearing, and consequently, it proved nothing of the existence of a valid arbitration agreement. Specifically, the Hotel contends FTJC offered no documents into evidence and it called no witnesses to testify. Instead, the Hotel contends that FTJC relies on evidence presented at a prior hearing that is not properly part of the record of this appeal. Due to the contentious nature of these arguments over the scope of the record, we initially assume without deciding, that FTJC offered sufficient evidence to prove the existence of an arbitration agreement.

With this assumption in place, we move forward to otherwise consider the Hotel's defense to arbitration, that is, that the trial court impliedly found FTJC waived its right to arbitrate by its litigation conduct.

## IV. WAIVER

As a defense to FTJC's motion to compel arbitration, the Hotel contends that FTJC waived arbitration by invoking the judicial process and it was prejudiced by that conduct.

### A. The law governing waiver

Whether a party has waived arbitration by litigation conduct that is detrimental to the other party is a question of law, which we review de novo. *Perry Homes*, 258 S.W.3d at 598; *see also Ellman v. JC Gen. Contractors*, 419 S.W.3d 516, 520 (Tex. App.—El Paso 2013, no pet.). "[A] party waives an arbitration clause by substantially invoking the judicial process to the other party's detriment or prejudice." *Perry Homes*, 258 S.W.3d at 589–90. Public policy favors the enforcement of contracts, including those related to arbitration, therefore the law imposes a strong presumption against waiver. *See In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex. 1998) (orig. proceeding) (per curiam). The presumption, however, is rebuttable. *See Perry Homes*, 258 S.W.3d at 590.

When the underlying facts are undisputed, waiver of an arbitration is a matter of law subject to de novo review on appeal. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511 (Tex. 2015). The party asserting waiver bears the burden of proof. *In re Bruce Terminix Co.*, 988 S.W.2d at 705. "To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party. That analysis applies to the waiver of a contractual right, as of any other." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022). Whether a party has waived its right to arbitration depends upon the totality of the circumstances. *Perry Homes*, 258 S.W.3d at 591. In making this determination, courts consider a wide variety of factors, including: (1) whether the party asserting the right to arbitrate is the plaintiff or defendant in the lawsuit; (2) how long the party waited before seeking arbitration; (3) the reasons for any delay in seeking to arbitrate; (4) whether and when the movant knew of the arbitration agreement during the period of delay; (5) how much discovery and other pretrial activity the party seeking to arbitrate conducted before seeking arbitration; (6) whether the party seeking to arbitrate requested the court to dispose of claims on the merits; (7) whether the party seeking to arbitrate asserted affirmative claims for relief in court; (8) the amount of time and expense the parties have expended in litigation; (9) whether the discovery conducted would be unavailable or useful in arbitration; and (10) when the case was to be tried. *See G.T. Leach Builders*, 458 S.W.3d at 512; *Perry Homes*, 258 S.W.3d at 590–92.

Providing further guidance, the Supreme Court of Texas noted that "no one factor is, by itself, dispositive." *RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 430 (Tex. 2016). Even so, the Supreme Court further explained that all of the factors are rarely presented in a single case. *Perry Homes*, 258 S.W.3d at 591. Additionally, *Perry Homes* recognized that "[f]ederal courts have found waiver based on a few, or even a single one." *Id.* (citing, *e.g.*, *Restoration Pres. Masonry,*

*Inc. v. Grove Eur. Ltd.*, 325 F.3d 54, 62 (1st Cir. 2003) (finding three-year delay alone sufficient to establish waiver); *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995) (finding removal to federal court alone sufficient to establish waiver)).

**B.  Application**

**1.  Did FTJC substantially invoke the judicial process such that it waived its contractual right to arbitration?**

Because some of the waiver factors are interrelated with one another, we group them into three topics: first, those related to the procedural posture of the case; second, those related to FTJC's delay in demanding arbitration; and third, those related to discovery, time, and expense. *See G.T. Leach Builders*, 458 S.W.3d at 512; *Perry Homes*, 258 S.W.3d at 590–92.

**(a) Factors related to the procedural posture of the case**

Factors related to the procedural posture of the case generally consider whether the party asserting a right to arbitrate sits as a plaintiff or defendant in the lawsuit, whether affirmative claims for relief were otherwise asserted in the trial court, and whether affirmative requests to dispose of claims on the merits were ever asserted.

*Plaintiff or Defendant*

Unquestionably, the Hotel—not FTJC—initiated the lawsuit in the court below, originally placing FTJC in the position of the defendant. This factor initially weighs against a finding of waiver because FTJC did not—at least at the outset—choose to litigate the dispute in court. *See Perry Homes*, 258 S.W.3d at 591 (citing *Grumhaus v. Comerica Sec., Inc.*, 223 F.3d 648, 650 (7th Cir. 2000)). To the extent we consider FTJC's initial position as the defendant, we must also keep in mind that it became a counterclaimant against the Hotel and a third-party plaintiff against Jordan Foster, then a completely new party to the litigation. The Supreme Court of Texas warns about placing undue importance on a party sitting as a plaintiff who filed suit because "Texas procedure

10

. . . contemplates that parties may file suit in order to compel arbitration." *Perry Homes*, 258 S.W.3d at 592 (citing TEX. CIV. PRAC & REM. CODE ANN. § 171.021(a) ("A court shall order the parties to arbitrate on application of a party showing: (1) an agreement to arbitrate; and (2) the opposing party's refusal to arbitrate.")).

*Affirmative claims for relief*

Here, FTJC's counterclaim and third-party petition are examples of it asserting affirmative claims for relief contrary to a desire to arbitrate. By making its counterclaim, and especially by bringing in Jordan Foster, who ultimately made its own claim against the Hotel, FTJC invoked the jurisdiction of the court and of the judicial process. *See Perry Homes*, 258 S.W.3d at 592. We determine this factor to weigh in favor of a finding of waiver.

*Motions for disposition on the merits*

It is undisputed that FTJC did not file any dispositive motions in this case. However, the Hotel argues under this factor that FTJC did file pleadings asking the trial court to limit its liability, including its third-party petition and a Motion for Leave to Designate Responsible Third Parties, in which it listed seven people or entities it blamed for defects and delays. We take note of the Hotel's argument, including the fact that FTJC's Motion for Leave to Designate Responsible Third Parties was filed after it had claimed a right to arbitration. However, this factor asks whether FTJC filed any dispositive motions. They have not, and so this factor weighs against a finding of waiver.

**(b) Factors related to FTJC's delay in demanding arbitration**

The factors related to FTJC's delay in demanding arbitration are how long FTJC waited before seeking arbitration, when the case was to be tried, whether and when FTJC knew of the arbitration agreement during the period of delay, and the reasons for any delay in seeking arbitration.

11

*How long FTJC waited & when the case was set for trial*

The Hotel filed this case on February 6, 2019. FTJC first claimed a right to arbitration in a letter to the Hotel dated September 23, 2019. It then waited until January 29, 2020 to file its motion to compel arbitration. Thus, FTJC did not first claim a right to arbitration until seven-and-a-half months after the initiation of the lawsuit, and it did not file its motion to compel arbitration until just shy of one year after the lawsuit began.

The trial in this case was initially set on June 5, 2020. However, on a motion for continuance filed by Jordan Foster, and the agreement of counsel, the setting was vacated by order dated January 29, 2020, and the trial date was reset for December 4, 2020. On the same date as that agreed order, FTJC filed its motion to compel arbitration. This means FTJC filed its motion to compel arbitration just over ten months prior to the trial date. While ten months can hardly be considered the "eve of trial,"[3] this factor, combined with the length of delay in filing a motion to compel arbitration, creates a rule of proportion wherein the time between the initiation of the lawsuit and the filing of the motion to compel arbitration is compared to the time between the motion to compel arbitration and the trial date. *See id.* at 596; *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 764 (Tex. 2006) (citing *Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 938 F.2d 1574, 1576–77 (2d Cir. 1991) (where arbitration was waived when request did not come until 18 months after filing and 4 months before trial)). Here, we compare the almost twelve months between the initiation of the lawsuit and FTJC's motion to compel arbitration with the ten months remaining until the trial date. We conclude that these two factors, when taken together, weigh slightly in favor of a finding of waiver. *See Hogg v. Lynch, Chappell & Alsup, P.C.*, 480 S.W.3d

---

[3] *Perry Homes*, 258 S.W.3d at 584 (filing motion to compel arbitration four days before trial date was considered the "eve of trial").

767, 773 (Tex. App.—El Paso 2015, no pet.) (party waited three months after beginning discovery and less than four months before the trial setting to seek arbitration); *Truly Nolen of Am., Inc. v. Martinez*, 597 S.W.3d 15, 22 (Tex. App.—El Paso 2020, pet. denied) (case had already been set for trial after both parties made such a request before motion for arbitration was filed several months later).

*The reasons for any delay in seeking to arbitrate*

FTJC claims that the reason for the delay in seeking arbitration is that it did not know about the arbitration clause. We find this argument to be problematic for FTJC for two reasons. First, as evidence for it not knowing about the arbitration clause, FTJC cites to the deposition of Frank James, where he testified that he did not even know—during the deposition—if there was a right to arbitrate between FTJC and the Hotel. The deposition, however, was taken on September 25, 2019, or two days after FTJC had first requested arbitration with the Hotel. Second, to the extent Frank James did not know the contents of the agreement with the Hotel, that failure does not excuse FTJC from acting inconsistently with its right to seek arbitration. We presume a party, like FTJC, who has the opportunity to read a contract containing an arbitration agreement and signs it, knows its contents. *See EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996). Moreover, FTJC and the Hotel are both sophisticated parties and there is no evidence of unequal bargaining power in favor of the Hotel. We conclude that this factor weighs in favor of a finding of waiver.

*Whether and when the party seeking arbitration knew of the agreement*

As stated above, the record is clear that FTJC actually knew of the agreement by September 23, 2019, despite Frank James' assertions two days later that he still did not know of the arbitration clause. At Frank James' deposition, the opportunity was afforded—if FTJC wanted to arbitrate—for it to state unequivocally that a valid arbitration agreement existed between the

13

parties and it was demanding arbitration. In fact, arbitration was the sole subject of the deposition, as the deposition had been scheduled only two days after FTJC's attorney sent a letter to the Hotel regarding arbitration. Yet, when testifying at the deposition, FTJC's owner said he did not know whether a contractual right to arbitration existed in the agreement with the Hotel, nor whether he preferred arbitration over resolution in the court system.

Additionally, even if September 23 was the first day FTJC realized an agreement to arbitrate existed, and even if we do not interpret Frank James' deposition as explicitly waiving arbitration, there is no explanation for the subsequent four-month delay before filing its motion to compel arbitration. Presumably, FTJC would argue that it was attempting to fulfill the contractual prerequisites to arbitration, such as submitting the claim to the Architect and demanding mediation. But it is not clear that FTJC, as the original defendant in the lawsuit, would have been required to fulfill those obligations; after all, it was the Hotel that initially made the claims. Even if FTJC was required to take those steps before filing a motion to compel arbitration, it could have submitted its claim to the Architect in late September—instead of on November 12, 2019—and then it could have moved to compel arbitration by late October, which would have been 30 days after submission of the claim to the Architect. As a result of FTJC's continued delays, even after it knew of the arbitration clause, we conclude that this factor weighs in favor of a finding of waiver.

### (c) Factors related to discovery, time, and expense

The factors in this category are how much discovery and other pretrial activity the party seeking to arbitrate conducted before seeking arbitration, whether the discovery conducted would be unavailable or useful in arbitration, and the amount of time and expense the parties have expended in litigation.

*How much discovery and other pretrial activity FTJC conducted before seeking arbitration*

Under this factor, the Hotel states that "[t]he parties expended substantial time and expense in litigation and discovery." As examples, the Hotel lists FTJC's counterclaim, its third-party claim, its motion for leave to designate responsible third parties , and its agreement to consolidate another party's claims against it into this lawsuit , all of which are a part of the appellate record. The Hotel also states that "both FTJC and the Hotel propounded written discovery." Although the docket summary does have a number of entries labeled "Certificate of Written Discovery," we cannot determine from the record who created the discovery requests, to whom they were directed, the number of individual requests within each instrument, the substance of those requests, or whether they were ever responded to. Even so, it is clear that FTJC actively engaged in discovery as it included requests for disclosure to the Hotel and Jordan Foster as a part of its counterclaim and third-party claim, respectively.

Jordan Foster served 53,390 pages of documents to counsel for all parties. Because it is unclear whose discovery request Jordan Foster's production was in response to, we cannot say that FTJC was directly responsible for the production, but we do note the Hotel's argument that Jordan Foster would not necessarily be a part of this litigation but for FTJC's third-party claim. FTJC filed a motion for protective order regarding 346 Requests for Admission sent by the Hotel. The parties agree that no oral depositions on the merits have been taken.

This factor requires us to analyze how much discovery and other pre-trial activity FTJC actually conducted before seeking arbitration. In our view, the record does not prove extensive discovery was conducted by FTJC. We also cannot say FTJC's filing of an answer or even a counterclaim against the Hotel rises to the level of substantially invoking the judicial process. *See G.T. Leach*, 458 S.W.3d at 512. However, we do find that FTJC's third-party claim against Jordan Foster does rise to that level. By filing an entirely separate claim against an entirely new party,

15

FTJC not only invoked the trial court's jurisdiction over Jordan Foster, but it opened the door to Jordan Foster's eventual direct claim against the Hotel. It also required the Hotel to review any documents Jordan Foster produced in discovery, which turned out to be 53,390 pages of responses. We determine that this factor weighs in favor of a finding of waiver.

*Whether the discovery would be unavailable or useful in arbitration*

Because none of the discovery requests and responses were made a part of the appellate record, we are unable to determine whether any of the discovery would be unavailable or useful in arbitration. Accordingly, this factor weighs against a finding of waiver.

*Time and expense*

In response to FTJC's motion to compel arbitration, the Hotel presented the trial court with an affidavit of Jim Scherr, an authorized representative of the Hotel, stating in relevant part that FTJC's litigation efforts:

> subjected [the Hotel] to many thousands of dollars in legal fees including having to respond to the claims and discovery asserted by Jordan Foster. Because of the affirmative steps FTJC took in invoking the jurisdiction of the Court, Jordan Foster propounded interrogatories, requests for production and disclosures and depositions upon written questions, which [the Hotel] has incurred thousands of dollars of attorneys' fees in responding.

FTJC argues that the Hotel presented no specific evidence of how much time it had spent on litigation efforts or what precise expense it incurred. We disagree with FTJC that such a specific showing is required under this element. *See Truly Nolen*, 597 S.W.3d at 24; *Ellman*, 419 S.W.3d at 522. Considering the almost twelve months that passed between the filing of this lawsuit and FTJC's motion to compel arbitration, numerous motions, all of which required briefing, several hearings, and at least some engagement in discovery, there can be little doubt that the Hotel incurred significant expenses litigating this case. We determine that this factor weighs in favor of a finding of waiver.

16

After considering the totality of the circumstances, we conclude that FTJC substantially invoked the judicial process, thereby waiving its right to arbitrate. *See Sedillo v. Campbell*, 5 S.W.3d 824, 827 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ("Actions that raise the specter of waiver may include the applicant's engaging in some combination of filing an answer, setting up a counterclaim, pursuing extensive discovery, moving for a continuance and failing to timely request arbitration.").

### 2. Was the Hotel prejudiced?

In *Perry Homes*, the Supreme Court of Texas further instructs that substantial invocation of the judicial process alone does not constitute waiver of a right to arbitrate unless the party opposing arbitration proves that it suffered prejudice as a result. *Perry Homes*, 258 S.W.3d at 593; *but see Morgan*, 142 S. Ct. at 1714 (explaining that "the usual federal rule of waiver does not include a prejudice requirement").

Prejudice may be shown by considerable delay, expense, or damage to the nonmovant's legal position. *See Ellman*, 419 S.W.3d at 522. Here, the Hotel has shown that FTJC's failure to timely demand arbitration has damaged its legal position. Seeking affirmative relief, FTJC brought Jordan Foster into the case via a third-party claim; in turn, Jordan Foster subsequently brought a crossclaim against the Hotel. In short, FTJC's conduct thrust the Hotel into litigation against a subcontractor with whom it has no contract at all, much less an agreement to arbitrate. As a result, if the claims between FTJC and the Hotel are stayed pending arbitration, the end result causes the Hotel to participate in arbitration with FTJC, and also engage in litigation with Jordan Foster, with such proceedings addressing the same issues. We agree with the Hotel that this will cause significant additional time and expense, as well as expose it to the risk of conflicting results arising from two different forums. *See BBX Operating, LLC v. Am. Fluorite, Inc.*, No. 09-17-00245-CV,

17

2018 WL 651276, at *8 (Tex. App.—Beaumont Feb. 1, 2018, no pet.) (memo. op.).

Additionally, we agree with the Hotel that it has been prejudiced by the time and expense already incurred during the course of the litigation so far, including during the four months between when FTJC absolutely knew about the arbitration clause and when it filed its motion to compel arbitration. First, while FTJC delayed, the Hotel discussed the dispute "in-depth" with MCS—the Project architects—and then hired them as expert witnesses. This fact made it impossible for the parties to then execute the dispute resolution process to its full intended effect; the first step in the process as outlined in AIA Document A201-1997 requires the dispute to be submitted to the Architect—presumably as a neutral party—for decision. And second, the Hotel presented the trial court with an affidavit of its authorized representative stating that the Hotel had incurred "many thousands of dollars in legal fees including having to respond to the claims and discovery asserted by Jordan Foster." As we stated earlier, the party opposing arbitration is not always required to show the specific cost of litigation in order to prove prejudice. *See Perry Homes*, 258 S.W.3d at 599–600.

Based on the totality of the circumstances, we conclude that—even after assuming without deciding there was a valid arbitration clause between FTJC and the Hotel—FTJC has waived its right to arbitrate by substantially invoking the judicial process such that this conduct prejudiced the Hotel. *See Truly Nolen*, 597 S.W.3d at 26; *Ellman*, 419 S.W.3d at 519. Thus, we overrule FTJC's second issue.

As a result of this determination, we do not reach either FTJC's issue asserting it established the existence of an arbitration agreement, or the Hotel's defensive argument contending that complete relief cannot be afforded to the parties through arbitration. *See* TEX. R. APP. P. 47.1.

18

## V. CONCLUSION

We affirm the trial court's order denying FTJC's motion for arbitration.


                                        GINA M. PALAFOX, Justice

September 28, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.