The trial court denied Cash Biz's motion. The court agreed with the Borrowers that (1) their allegations related solely to Cash Biz's use of the criminal justice system so the arbitration clause was inapplicable, and (2) Cash Biz waived its right to arbitration by substantially invoking the judicial process.
Cash Biz filed an interlocutory appeal. The court of appeals reversed. 539 S.W.3d 342, ----, 2016 WL 4013794 (Tex. App.-San Antonio 2016). The appeals court first determined that the Borrowers' claims fell within the scope of the arbitration provision because the Borrowers' allegations were factually intertwined with the loan contracts. Thus, the broad definition of "dispute" in the arbitration provision encompassed the claims. Id. at ----. The court next concluded that Cash Biz did not waive its right to enforce the arbitration provision because "Cash Biz's filing of a criminal complaint [did] not rise to the extent of active engagement in litigation that Texas courts have consistently held to be specific and deliberate actions inconsistent with a right to arbitrate or that display an intent to resolve a dispute through litigation." Id. Justice Martinez disagreed, maintaining that Cash Biz substantially invoked the judicial process by deliberately and repeatedly invoking the criminal justice system. Id. at 354-59 (Martinez, J., dissenting).
In this Court, the Borrowers assert the same substantive arguments that they did in the court of appeals. That is, they first argue that Cash Biz failed to meet its burden to prove their claims are within the scope of the arbitration agreement. In the alternative, they maintain that if the claims fall within the scope of the agreement, Cash Biz waived its right to arbitration by substantially invoking the judicial process to their prejudice by filing criminal charges against them.
Cash Biz responds, as it did in the courts below, that it met its burden to prove the arbitration agreement encompasses the claims and that the Borrowers failed to meet their burden to prove it waived its right to arbitrate. Further, it contends that the Borrowers produced no evidence to prove they were actually prejudiced *115 by any of its actions. Finally, Cash Biz asserts that the trial court erred by not enforcing the contractual waiver-of-class-action provision.
II. Law and Standard of Review
The Federal Arbitration Act (FAA) generally governs arbitration provisions in contracts involving interstate commerce. In re Rubiola , 334 S.W.3d 220, 223 (Tex. 2011) (citing 9 U.S.C. § 2 ). The loan contracts specifically provide that the arbitration provision at issue here is governed by the FAA, and neither party argues otherwise. Under the FAA, a presumption exists favoring agreements to arbitrate. In re FirstMerit Bank, N.A. , 52 S.W.3d 749, 753 (Tex. 2001). A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and that the claims at issue fall within the scope of that agreement. Venture Cotton Coop. v. Freeman , 435 S.W.3d 222, 227 (Tex. 2014). If the party seeking to compel arbitration meets this burden, the burden then shifts, and to avoid arbitration, the party opposing it must prove an affirmative defense to the provision's enforcement, such as waiver. Id. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." In re Serv. Corp. Intern. , 85 S.W.3d 171, 174 (Tex. 2002) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp. , 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ).
We review a trial court's order denying a motion to compel arbitration for abuse of discretion. In re Labatt Food Serv., L.P. , 279 S.W.3d 640, 642-43 (Tex. 2009). We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo. Id. Whether the claims in dispute fall within the scope of a valid arbitration agreement and whether a party waived its right to arbitrate are questions of law, which are reviewed de novo. Id. ; Perry Homes v. Cull , 258 S.W.3d 580, 598 & n.102 (Tex. 2008).
III. Analysis
A. Are the Claims Within the Scope of the Arbitration Agreement?
The Borrowers assert that their claims are not within the scope of the arbitration provision because the claims relate solely to Cash Biz's illegal use of the criminal justice system. They also contend that all the damages claimed are based solely on criminal fines, jail time, and loss of reputation related to the criminal charges, rather than breach of contract.
Both Texas policy and federal policy favor arbitration. In re FirstMerit Bank , 52 S.W.3d at 753. Thus, courts "resolve any doubts about an arbitration agreement's scope in favor of arbitration." Id. Further, in deciding questions like those before us, courts focus on the factual allegations and not on the legal causes of action asserted. Id. at 754. The presumption in favor of arbitration "is so compelling that a court should not deny arbitration 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.' " Prudential Sec. Inc. v. Marshall , 909 S.W.2d 896, 899 (Tex. 1995) (quoting Neal v. Hardee's Food Sys., Inc. , 918 F.2d 34, 37 (5th Cir. 1990) ). Further, the scope of an arbitration clause that includes all "disputes," and not just claims, is very broad and encompasses more than claims "based solely on rights originating exclusively from the contract." See *116 Pinto Tech. Ventures, L.P. v. Sheldon , 526 S.W.3d 428, 439 (Tex. 2017) (examining a forum-selection clause and noting the analogies between such clauses and arbitration agreements).
Here, the arbitration agreement applies to "all disputes" and specifies that " 'dispute' and 'disputes' are given the broadest possible meaning and include, without limitation ... all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision." Given the presumption favoring arbitration and the policy of construing arbitration clauses broadly as noted above, it follows that the arbitration clause here applies-just as it says-to all disputes, even those relating only indirectly to the loan agreements.
The Borrowers asserted that after they missed payments, Cash Biz deposited their postdated checks; the checks were returned for insufficient funds; Cash Biz threatened the Borrowers with criminal prosecution unless the loans were repaid; and when the Borrowers failed to pay, Cash Biz indeed pursued charges for issuance of bad checks. The Borrowers allege that when Cash Biz entered into the loan agreements, it failed to disclose the possibility that if the personal checks were presented to the banks for payment and were not paid, criminal prosecutions would follow.
The Borrowers' claims are not for breach of any specific obligations under the loan contracts. Nevertheless, their claims are based on the manner in which Cash Biz pursued collection of loans and are at least indirectly related to the contracts the Borrowers signed obligating them to repay the loans. Therefore, we agree with Cash Biz that the Borrowers' claims are within the scope of the arbitration provision.
In light of the foregoing, the Borrowers must arbitrate their claims unless they prove the affirmative defense on which they rely, that Cash Biz waived its right to arbitrate disputes. See Freeman , 435 S.W.3d at 227.
B. Waiver
The Borrowers assert that Cash Biz impliedly waived its right to arbitration by its conduct, not that it expressly waived the right. To establish the implied waiver that they rely on-substantial invocation of the judicial process-the Borrowers had the burden to prove that (1) Cash Biz substantially invoked the judicial process in a manner inconsistent with its claimed right to compel arbitration, and (2) the Borrowers suffered actual prejudice as a result of the inconsistent conduct. G.T. Leach Builders, LLC v. Sapphire V.P., LP , 458 S.W.3d 502, 511-12 (Tex. 2015) ; Perry Homes , 258 S.W.3d at 589-90.
As to whether a party has substantially invoked the judicial process, courts consider a wide variety of factors and look to the specifics of each case. G.T. Leach Builders, LLC , 458 S.W.3d at 512. The necessary conduct must go beyond merely filing suit or seeking initial discovery. Perry Homes , 258 S.W.3d at 590. We have declined to conclude that the right to arbitrate was waived in all but the most unequivocal of circumstances. Compare id. at 595-96 (holding that the plaintiffs waived the right to arbitrate by participating in extensive discovery including hundreds of requests for production and interrogatories, then requesting arbitration fourteen months after filing suit and only four days prior to the scheduled trial date), with G.T. Leach Builders, LLC , 458 S.W.3d at 512 (holding plaintiffs did not waive arbitration by asserting counterclaims; seeking change of venue; filing motions to designate responsible third parties, for continuance, and to quash depositions; designating experts; and waiting *117 six months to move for arbitration), In re Fleetwood Homes of Tex., L.P. , 257 S.W.3d 692, 694 (Tex. 2008) (holding party did not waive arbitration by noticing deposition, serving written discovery, and waiting eight months to move for arbitration), In re Bruce Terminix Co. , 988 S.W.2d 702, 703-04 (Tex. 1998) (holding arbitration was not waived by sending eighteen interrogatories and nineteen requests for production and waiting six months to seek arbitration).
Here, the factors generally examined to determine waiver-how much discovery has been conducted, who initiated it, and whether it relates to the merits; how much time and expense has been incurred in litigation; and the proximity in time between a trial setting and the filing of the motion seeking arbitration-may serve as guideposts. See Perry Homes , 258 S.W.3d at 590-92. But those factors are not wholly on point because the conduct in question in this case involves the criminal justice system.
In attempting to meet their burden, the Borrowers introduced a list of cases and case summaries for criminal prosecutions in a Harris County Justice of the Peace Court. Cash Biz was named "complainant" in many of these cases, including those of the named Borrowers. The complaints resulted in criminal charges against the Borrowers for "issuance of a bad check." The Borrowers assert that without the information from Cash Biz, no criminal prosecutions would have occurred. And although the Borrowers argued, and continue to argue, that Cash Biz filed criminal complaints against them, the record does not reflect that it did. Rather, the record contains an affidavit from a Cash Biz representative, David Flanagan, in which he stated in part as follows:
Cash Biz simply left the information entirely to the discretion of the district attorney, and any action taken by the district attorney thereafter was made completely on his/her own. Cash Biz did not make any formal charges, did not participate in any criminal trial, and did not obtain criminal judgments. Similarly, Cash Biz was neither a witness in any criminal proceeding nor was it asked to appear in any such proceeding.
The Borrowers do not attack Flanagan's affidavit or reference evidence contradicting the statements in it. The Borrowers argue that the court of appeals did not consider all of the evidence, but the only information they provided to the trial court apart from case summaries consisted of news reports and online magazine articles stemming from a Texas Appleseed investigation. Those documents indicate that Texas Appleseed, an Austin-based organization that advocates for the poor, investigated payday lenders and discussed what it labeled as questionable practices by many of these businesses, including Cash Biz. But the reports-assuming they were properly before the trial court-do not refer to evidence of conduct by Cash Biz beyond providing information to the district attorney as was set out in Flanagan's affidavit. And while the Borrowers argue that the court of appeals failed to defer to the trial court's factual determinations that Cash Biz "participated in criminal trials [and] obtained criminal judgments," we agree with the appellate court that these findings are not supported by legally sufficient evidence. See In re Labatt Food Serv., L.P. , 279 S.W.3d at 643 (holding that deference to trial court findings is limited to those supported by the record). The Borrowers simply provided no evidence of any actions by Cash Biz related to the criminal charges other than evidence that Cash Biz was the complainant in them. This evidence alone does not meet the *118 Borrowers' burden to prove that Cash Biz substantially invoked the judicial process.
The Borrowers reference Principal Investments, Inc. v. Harrison in which a lender filed more than 16,000 individual collection actions in justice of the peace courts and obtained default judgments against many of the borrowers. 366 P.3d 688, 690-91 (Nev. 2016). The Supreme Court of Nevada held that the lender waived its right to arbitrate by initiating the collection actions and inviting the borrowers to appear and defend on the merits of the claims. Id. Here, in contrast, the evidence shows only that Cash Biz informed the district attorney of the checks returned for insufficient funds. Thus, the district attorney, not Cash Biz, ultimately made the decision to prosecute or not prosecute in a particular case.
The Borrowers also point to In re Christus Spohn Health System Corp. to support their position that a lender's actions within the criminal justice system can waive its rights within the civil justice system. 231 S.W.3d 475 (Tex. App.-Corpus Christi 2007, no pet.). In that case, after a murder in a hospital parking lot, the victim's husband filed a civil suit against the hospital, and the hospital moved to compel arbitration. Id. at 481. The trial court denied the motion because the hospital had sought an order of contempt against the husband's counsel during the criminal proceedings. Id. The appeals court explained that while it ordinarily "would not consider actions in a separate cause as indicative of waiver," the hospital's actions were "part of its strategic plan of defense in the underlying matter that would be inconsistent with a right to arbitrate." Id. The Borrowers contend that Cash Biz's actions mirror that of the hospital-the criminal proceedings arising from Cash Biz's contacts with the district attorney were part of a strategic plan to collect on the debts owed.
Without passing judgment on the decision in In re Christus Spohn Health System Corp. , a no petition case, Cash Biz's conduct in this case consisted solely of providing information to the district attorney and letting the chips fall where they may. We have no doubt that Cash Biz hoped that the falling chips would result in the borrowers paying their loans. But the Borrowers did not present evidence that Cash Biz went beyond providing truthful information to the district attorney. Cash Biz's conduct arguably demonstrates an intent to cause the district attorney to initiate a judicial proceeding. But even so, it is not more than initiating litigation, which we have held does not substantially invoke the judicial process and waive the right to arbitrate. Perry Homes , 258 S.W.3d at 590.
We conclude that Cash Biz did not substantially invoke the judicial process. Accordingly, we need not address whether the Borrowers were actually prejudiced by Cash Biz's conduct.
We recognize that our opinion does not accord with the decision in Vine v. PLS Financial Services, Inc. , 689 Fed.Appx. 800 (5th Cir. 2017) (per curiam). There, as did Cash Biz here, a short-term lender had borrowers sign postdated checks, which were presented for payment after the borrowers defaulted. Id. at 801. When the checks were not paid, the lender submitted the unpaid checks and affidavits to the local district attorneys. Id. The Vine court declined to follow the decision of the court of appeals in this case. Id. at 806. Rather, it concluded that the lender's actions in submitting affidavits to prosecuting attorneys waived its right to enforce the arbitration agreement. Id.
With due respect, and recognizing that it is important for federal and state law to be as consistent as possible in this area where we have concurrent jurisdiction, we agree *119 with the dissenting justice in Vine . Id. at 807 (Higginson, J., dissenting). We conclude, as he did, that although some lenders may be "gaming the system" by taking actions like the lenders took there and as Cash Biz took here, more is required for waiver of a contractual right to arbitrate. Id.
IV. Conclusion
The claims brought by the Borrowers fell within the scope of the arbitration agreement and there was no evidence to support the trial court's finding that Cash Biz waived its right to arbitrate. We affirm the judgment of the court of appeals.
Justice Blacklock did not participate in the decision.