In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-21-00403-CV**

**WAL-MART STORES TEXAS, LLC, Appellant**

**V.**

**TONY PEAVLEY, Appellee**

---

**On Appeal from the 163rd District Court
Orange County, Texas
Trial Cause No. B210209-C**

---

**MEMORANDUM OPINION**

Wal-Mart Stores Texas, LLC ("Walmart Texas") appeals the trial court's Order Denying its Motion to Compel Arbitration and Stay Litigation in a suit asserting a negligence claim brought by its employee, Tony Peavley.[1,2] In four issues, Walmart Texas asks whether: 1) the Federal Arbitration Act applies to the

---

[1]Appellee's name is Tony Peavley, but the lawsuit incorrectly named him as "Tony Peazley." We refer to him by his correct name in this opinion.

[2]We may consider this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 51.016, 171.098(a)(1) (permitting interlocutory appeal from an order denying motion to compel arbitration).

arbitration agreement; 2) Walmart met its burden to show the parties' arbitration agreement was a valid agreement to arbitrate between Peavley and Walmart, or that Peavley ratified and accepted the arbitration agreement by accepting benefits under Walmart Texas's Injury Care Benefit Plan; 3) Walmart met its burden to show that Peavley's claims fell under the scope of the arbitration agreement; and 4) Peavley asserted any viable affirmative defense to the arbitration agreement's enforcement or met his evidentiary burden to establish a viable defense to enforcement. As set forth below, we will reverse the trial court's Order Denying Walmart Texas's Motion to Compel Arbitration and Stay Litigation and remand for further proceedings consistent with this opinion.

## Background

Peavley has been a Walmart Texas employee (or "associate") since 2017. He allegedly sustained injuries in the course and scope of his employment while moving pallets of water and subsequently sued Walmart Texas for negligence. Walmart Texas answered and demanded arbitration by asserting there was a valid, enforceable arbitration agreement. Walmart Texas is a non-subscriber to workers' compensation insurance and instead, adopted its Texas Injury Care Benefit Plan as of 2012 ("2012 Plan") in lieu of workers' compensation insurance for associates who sustained injuries in the course and scope of their employment.

On July 1, 2017, the 2012 Plan was amended and restated in Walmart Texas's current Texas Injury Care Benefit Plan (the "Plan"). Walmart Inc. (formerly known

2

as Walmart Stores, Inc.) is the Plan Sponsor, and Walmart Texas is a participating employer in the Plan. The Plan provides specific benefits for employees, including payments for medical expenses and wage replacement, in the event of injury, work-related illness, death, or dismemberment. Appendix A of the Plan is titled "ARBITRATION OF CERTAIN INJURY-RELATED DISPUTES" (the "Arbitration Agreement").

Under the Arbitration Agreement, binding arbitration is the sole and exclusive remedy for resolving any covered claim or dispute between Walmart Texas and an associate. In other words, neither the associate nor Walmart Texas shall be entitled to a bench or jury trial on any claim covered by the Arbitration Agreement. "Covered claims" include "any legal or equitable claim by or with respect to an Associate for any form of physical or psychological damage, harm, or death which relates to an accident, occupational disease, or cumulative trauma." "Covered claims" also include "[t]he determination of whether a claim is covered by this [Arbitration Agreement]." The Arbitration Agreement states that "This Policy applies to each Associate and Employer without regard to whether they have completed and signed a Receipt, Safety Pledge, and Arbitration Acknowledgement form or similar written receipt." It further provides that this policy for resolving claims by arbitration is equally binding on the employer and the associate. Finally, if either Walmart Texas or the associate files a claim covered by the Arbitration Agreement "…by any means other than arbitration, the responding party shall be entitled to dismissal of such

3

action, and the recovery of all costs and attorney's fees and expenses related to such action."

Peavley concedes he completed a computer-based learning ("CBL") program online. In that CBL, Peavley was required to complete various modules and click acknowledgments that were required before moving on. Peavley did so, and one of the required CBL modules included an acknowledgment of the Arbitration Agreement, which required him to click an "I Understand" button to complete. After reviewing the information in the CBL module, it advised Peavley to click on a link containing the Plan and read it, which contained the Arbitration Agreement as Appendix A, among other things. Peavley did so, then to complete the CBL module, he had to click the "I Understand" button. The section informs the associate that by clicking the "I Understand" button, the associate is completing the course and acknowledging: 1) that the associate "read and [understood] the Arbitration Acknowledgement and Policy;" (2) that the associate understands his or her rights and obligations under the Plan; and (3) that the associate's training record will be updated to show that the associate has successfully completed the course. Peavley completed these CBL training modules on three occasions – in September 2017, February 2019, and May 19, 2020, the last of which was eight days before his alleged on the job injury.

Walmart Texas filed its Motion to Compel Arbitration and Stay Litigation and supported the Motion to Compel with the following evidence: CBL Module; the Plan

including the Arbitration Agreement and Acknowledgment; Peavley's CBL Record; and Senior Manager of Regional Risk Management Tim Osmond's Affidavit, which outlines the CBL procedures and that Walmart Texas maintains records showing Peavley completed the training module by accessing the module with his confidential associate identifier and password based on the training records that Walmart Texas retains.

Osmond authenticated the documents attached to the Motion to Compel, including the Plan CBL module as Exhibit "A." Osmond averred that within that CBL module, there is a "Mandatory Arbitration Process" section and a section titled "Summary Plan Description" and associates "must click the link to the Plan and review it before continuing." Walmart Texas attached a copy of its Summary Plan, which contained the "Arbitration of Certain Injury-Related Disputes" as "Appendix A." Osmond explained the Acknowledgements contained an express declaration that the associate was acknowledging by clicking the "I Understand" button he had read and understood the "Arbitration Acknowledgment and Policy." Osmond averred Walmart Texas's training records showed that Peavley completed the CBL modules for the Plan and that the Plan, including the Summary Plan Description with Appendix A, was provided to Peavley through CBL training as a part of his employment. Osmond further averred that Peavley's training records show Peavley followed the described process to complete the Plan CBL and show that he

acknowledged he read and understood Appendix A, Arbitration of Certain Injury Related Disputes.

More importantly and more specifically, Appendix A contains the following language:

> **(b) Binding Effect:** This Policy for resolving claims by arbitration is equally binding upon, and applies to any such claims that may be brought by, an Employer and each Associate and his/her spouse, children, parents, beneficiaries, Representatives, executors, administrators, guardians, heirs or assigns (including, but not limited to, any survival or wrongful-death claim). This binding arbitration will be the sole and exclusive remedy for resolving any such claim or dispute.
>
> > (1) This Policy applies to each Associate and the Employer without regard to whether they have completed and signed a Receipt, Safety Pledge and Arbitration Acknowledgement form or similar written receipt. Adequate consideration for this Policy is represented by, among other things, eligibility for (and not necessarily any receipt of) benefits under this Plan and the fact that it is mutually binding on both the Employer and Associates. **Any actual payment of benefits under this Plan to or with respect to an Associate shall serve as further consideration for and represent the further agreement of such Associate to the provisions of this Policy.** This Policy shall remain in effect with respect to the Employer and all Associates, without regard to any Associate refusal of benefits under this Plan, return of benefit payments under this Plan to an Employer, ineligibility for or cessation of benefits under this Plan in accordance with its terms, or any voluntary or involuntary termination of an Associate's employment with an Employer.

Peavley responded to the Motion to Compel Arbitration and argued that no valid agreement to arbitrate exists because he did not agree to arbitrate. In support of his response, Peavley provided an affidavit averring that

6

> I have never agreed to or otherwise consented to any arbitration agreement to my knowledge. I never signed an arbitration agreement in person or electronically, or otherwise. It was never explained to me that by clicking the 'I understand' button at the end of my training module that I was creating contractual obligations for myself, or any other party. Upon completing the course, the only option I had was to select 'I understand' as that was the only button I could choose.

Peavley objected to Osmond's affidavit on the basis that Osmond lacked personal knowledge but failed to obtain rulings on these objections. Walmart Texas also filed Objections to Plaintiff's Affidavit and Reply to Plaintiff's Response to Defendant's Motion to Compel Arbitration and Stay Litigation and attached a copy of Peavley's recorded statement, where he acknowledged completing the CBLs. The trial court overruled Walmart Texas's objections to Peavley's affidavit and denied the Motion to Compel Arbitration and Stay Litigation.

**Standard of Review**

"[A] party seeking to compel arbitration must establish the existence of a valid arbitration agreement and show that the disputed claims fall within the scope of that agreement." *Wagner v. Apache Corp.*, 627 S.W.3d 277, 282 (Tex. 2021) (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005)). We review a trial court's order denying a motion to compel arbitration for an abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo. *Id.*; *see also Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 204 (Tex. 2021) (noting deference to factual determinations if they are supported by

7

evidence). Whether the disputed claims fall within the scope of a valid arbitration agreement is a question of law, which we review de novo. *See Henry*, 551 S.W.3d at 115; *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009).

**Analysis**

In his brief, Peavley concedes jurisdiction and does not dispute the scope of the agreement. Rather, citing his own affidavit testimony, he contests the existence of an agreement to arbitrate, arguing that the evidence at trial created a fact issue as to whether he agreed to arbitrate in the absence of a signature and "that he had no such notice and agreed to no such thing." Accordingly, we turn to issues two and four: whether Walmart Texas met its burden to show there was a valid agreement to arbitrate between it and Peavley; and whether Peavley asserted any viable affirmative defense to the arbitration agreement's enforcement or met his evidentiary burden to establish a viable defense to enforcement.

To compel arbitration, a party must prove that a valid arbitration agreement exists. *Aerotek*, 624 S.W.3d at 204; *Henry*, 551 S.W.3d at 115 (citation omitted). In order for the Arbitration Agreement to be valid, Peavley must have consented to it. *See Aerotek*, 624 S.W.3d at 204 (citation omitted). Peavley does not contest that he completed the CBL module, instead he argues that there is no valid Arbitration Agreement because he did not receive notice or agree to the provision. Peavley's argument is like that of the employees attempting to avoid the arbitration provision in *Aerotek*, which the Texas Supreme Court rejected. *See id.*

8

"An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Tex. Bus. & Comm. Code Ann. § 322.009(a); *see also Aerotek*, 624 S.W.3d at 205–06 (discussing same). The *Aerotek* Court explained that a

> security procedure[] may include requiring personal identifying information—such as a social security number or an address—to register for an account; assigning a unique identifier to a user and then tying that identifier to the user's actions; maintaining a single, secure system for tracking user activities that prevents unauthorized access to electronic records; business rules that require users to complete all steps in a program before moving on or completing it; and timestamps showing when users completed certain actions.

*Id.* at 205–06 (internal citations omitted). These examples of security procedures are non-exclusive. *Id.* at 206.

Walmart Texas provided evidence in the form of Osmond's affidavit. Osmond's affidavit established and the evidence Walmart Texas attached to its motion established that Peavley completed the training modules at a Walmart location and accessed the modules by entering his confidential associate identification number and password. Osmond explained that once a module is completed, an electronic training record is retained showing the date of completion,

9

status of completion, and score if a test was required.[3] Osmond further averred that within the Plan CBL module, the associates must click the link to the Plan and review it before they can continue. "Within the Summary Plan Description that the Associate must click on to review before continuing to the next page is Appendix A titled 'Arbitration of Certain Injury Related Disputes,' which thoroughly describes the arbitration program." Finally, in the "Acknowledgment of Completion" section of the CBL, by clicking "I Understand" the participant acknowledged that he read and understood the Arbitration Acknowledgment and Policy. Peavley does not dispute that he completed the CBL module at issue or that he received benefits under the plan. Peavley's simple denial that he did not "agree" and did not have "notice" constituted no evidence. *See Aerotek* at 209. Peavley could not have completed the CBL without acknowledging and consenting to the Arbitration Agreement. *See id.* In other words, the evidence conclusively shows Peavley, by clicking the button, acknowledged he understood the Arbitration Agreement and that is sufficient to show he agreed to the terms in what the document says.

---

[3]On appeal, Peavley complains that Osmond's affidavit lacks personal knowledge, which is a defect of form. Although he objected to Osmond's affidavit in the trial court, Peavley failed to obtain rulings on those objections and has waived them. *See Stewart v. Sanmina Tex. L.P.,* 156 S.W.3d 198, 207 (Tex. App.—Dallas 2005, no pet.) (stating lack of personal knowledge is a defect of form). Because Peavley failed to obtain a ruling on his objections as to lack of personal knowledge in the trial court, he cannot raise these objections on appeal. *See id.*

An employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of the arbitration policy and accepted it. *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 163 (Tex. 2006); *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002). In *Dallas Peterbilt*, the employee argued that despite signing an acknowledgment form of a summary, he did not have notice because he never received the actual Mutual Agreement to Arbitrate Claims. *See* 196 S.W.3d at 162. Likewise, in *Halliburton*, the employee received a one-page summary of the agreement to arbitrate. *See* 80 S.W.3d at 568–69. In essence, both the employees in each case argued that only the underlying agreements themselves could provide notice. Rejecting these arguments, the Texas Supreme Court explained that in determining whether an employee received notice of a binding arbitration agreement, the "cases do not confine that 'notice analysis' to the underlying agreement, but to all communications between the employer and employee." *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d at 162 (citations omitted). Although a summary of such an arbitration policy could be sufficient to place one on notice, the evidence here goes a step further and establishes that Peavley received the actual policy as Appendix A to the Summary Plan Description.

Peavley contests that he received notice of the arbitration policy; however, his argument lacks merit since he does not dispute completing the CBL and clicking the button that states "I Understand." By clicking that button, the language in the module

11

reflects that Peavley expressly acknowledged he had read and understood the agreement that required him to arbitrate injury-related disputes. Appendix A states the policy is binding on Walmart and Peavley, and the fact Peavley accepted benefits under the Plan serves "as further consideration for and represent[ed] the further agreement" that Peavley agreed to the terms in the Plan. We conclude Peavley had notice of the Arbitration Agreement both before his injury occurred and before he accepted benefits under the Plan. *See id.* at 163 (finding the employer's summary constituted effective notice since it unequivocally provided the employee with knowledge of the arbitration agreement); *In re Halliburton Co.*, 80 S.W.3d at 569 (holding that a notice and summary given to the employee was unequivocal notice).

"An at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law." *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d at 163 (citation omitted). Walmart Texas's evidence established that Peavley received notice of the arbitration policy when he completed the CBL modules on three separate occasions and continued to work for Walmart Texas after receiving notice. Furthermore, Peavley accepted the terms of the Arbitration Agreement. Due to the above, we further conclude Peavley agreed to arbitrate his on-the-job injury claim against Walmart Texas as a matter of law.[4] *See id.*

---

[4]Also of note, our sister court in Dallas held the same Arbitration Agreement was valid and enforceable where another Walmart employee completed the online

We conclude that Walmart Texas met its burden of showing the existence of a valid agreement to arbitrate between it and Peavley. We sustain issue two.

Since Walmart Texas met its burden of establishing the existence of a valid arbitration agreement and Peavley does not dispute that the claims fall within the scope of that agreement, the burden shifted to Peavley to prove an affirmative defense to enforcing the agreement. *See Henry*, 551 S.W.3d at 115 (citations omitted). Peavley failed to plead any affirmative defense to enforcement, and we have already explained that his affidavit denying he agreed or consented to arbitrate claims with his employer did not create a fact issue on whether he was bound to resolve his dispute with Walmart Texas under the arbitration agreement in the Plan. *See Aerotek*, 624 S.W.3d at 210. Accordingly, Peavley failed to meet his burden of establishing a viable affirmative defense to the Arbitration Agreement's enforcement. We sustain issue four.

**Conclusion**

Since Peavley does not contest jurisdiction or the scope of the Arbitration Agreement, we overrule issues one and three. As to Walmart Texas's remaining

CBL modules containing the same materials and acknowledged receiving the arbitration policy. *See Wal-Mart Stores, Inc. v. Constantine*, No. 05-17-00694-CV, 2018 WL 2001959, at *1, 6–8 (Tex. App.—Dallas Apr. 30, 2018, no pet.) (mem. op.). The plaintiffs there argued that Walmart's evidence showing the employee completed the Plan CBL module was insufficient to show that he agreed to arbitrate his clam. *See id.* at *5. There, as here, the employee clicked an "I Understand" button beneath the "Arbitration Acknowledgement." *See id.*

issues, we conclude Walmart Texas met its burden of showing the parties had a valid arbitration agreement, established Peavley acknowledged completing the CBL module, and established that Peavley continued working for Walmart Texas after receiving notice of the arbitration policy. We further conclude that Peavley failed to create a fact issue by submitting an affidavit that did nothing more than deny his agreement or consent. *See Aerotek*, 624 S.W.3d at 210; *In re Dallas Peterbilt*, 196 S.W.3d at 163. Consequently, Peavley's affidavit failed to raise a fact issue showing he had an affirmative defense to enforcing the Arbitration Agreement.

We reverse the Order Denying Walmart Texas's Motion to Compel Arbitration and Stay Litigation and remand the case to the trial court for further proceedings consistent with this opinion. Tex. R. App. P. 43.2(d).

REVERSED AND REMANDED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on January 19, 2023
Opinion Delivered February 9, 2023

Before Golemon, C.J., Horton and Johnson, JJ.

14