In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

————————————

NO. 09-24-00304-CV

————————————

**BEACH CLUB CONDOMINIUMS, A WINKLER DEVELOPMENT, L.P., WINKLER & ASSOCIATES, INC., WINKLER DEVELOPMENT, INC., AND JAMES WINKLER, Appellants**

v.

**SHORELINE ON LAKE CONROE CONDOMINIUM ASSOCIATION, INC., Appellee**

**On Appeal from the 457th District Court
Montgomery County, Texas
Trial Cause No. 23-01-00993-CV**

**OPINION**

This is an interlocutory appeal from the trial court's denial of a motion to compel arbitration in a dispute between a condominium association, Appellee, Shoreline on Lake Conroe Condominium Association, Inc., and the condominium's developers, Appellants, Beach Club Condominiums, a Winkler Development, L.P., Winkler & Associates, Inc., Winkler Development, Inc., and James Winkler. Because

1

we conclude the association's live pleading alleges construction disputes over which the developers may compel arbitration, we reverse the trial court's order denying arbitration and remand to the trial court for proceedings consistent with our opinion, below.

## Background

The arbitration clause which is the subject of this appeal is contained in a Declaration of Condominium for Shoreline on Lake Conroe Condominiums ("Declaration") executed in March 2018 by Appellant, Beach Club Condominiums, a Winkler Development, LP, ("Beach Club"). Appellant, James Winkler ("James"), signed the Declaration in his capacity as president of Appellant, Winkler & Associates, Inc., Beach Club's general partner.[1] Shoreline on Lake Conroe Condominiums is a 56-unit condominium complex located in Waterpoint on Lake Conroe in Montgomery County. Appellee, Shoreline on Lake Conroe Condominium Association, Inc. ("Shoreline Association") is a condominium association, comprised of individual owners, whose board is responsible for managing the condominiums.

---

[1]James Winkler denies he was involved in any of the transactions or occurrences at issue in this case in his personal capacity, and it is unclear whether Appellant, Winkler Development, Inc., was involved in any way, but any such involvement does not impact this appeal.

Under the Declaration, Beach Club would retain control of Shoreline Association's board until a certain percentage of units were sold, at which time the board would be elected by the owner-members. Article XI of the Declaration, entitled "Alternate Dispute Resolution," requires non-binding mediation as a condition precedent to litigation between the parties. Article XI notwithstanding, Article XII, entitled "Resolution of Construction Disputes," grants Beach Club sole discretion whether to require arbitration of "Construction Disputes," with mandatory mediation prior to arbitration; however, the Declaration does not define the term "Construction Dispute."

By December 2020, Beach Club had sold only 13 of the 56 condominium units, and when its lender, R.J. Back Corporation, indicated it would not extend financing, Beach Club executed a deed in lieu of foreclosure and allegedly turned over all books and records to R.J. Back's president, Raymond Winkler ("Raymond") in April 2021. In the meantime, James, acting in his representative capacity for Beach Club, had signed a First Amendment to the Declaration in April 2019. After R.J. Back acquired the property in April 2021, Raymond, acting in his representative capacity for R.J. Back, executed a Second Amendment in April 2021, a Third Amendment in December 2021, and a Fourth Amendment in May 2022, even though control of Shoreline Association's board had allegedly been turned over to the owner-members in early 2022.

3

In January 2023, Shoreline Association filed an Original Petition against Beach Club, Winkler & Associates, Winkler Development, and James (collectively "Beach Club Parties"), along with R.J. Back and Raymond (collectively "R.J. Back Parties"), alleging the four amendments to the Declaration had been improperly adopted and were detrimental to Shoreline Association. The petition included a motion to compel mediation for what it argued was a non-construction dispute and asked the court to enter a judgment declaring the amendments void and awarding Shoreline Association its costs, attorney fees and other relief. The petition also included a motion to compel production of the association's books and records.

After answering the lawsuit, Beach Club Parties filed a Motion to Stay and to Compel Arbitration and Mediation, arguing the petition included disputes over the "construction and validity" of the Declaration and its four amendments. The trial court denied this motion, granting instead Shoreline Association's motion to compel mediation of non-construction disputes as requested in the petition. Mediation did not resolve the litigation.

In December 2023, Beach Club Parties filed a motion asking the trial court to reconsider its previous ruling and order arbitration because Shoreline Association had served Beach Club Parties a set of interrogatories seeking information about the construction of the condominiums, which, according to the motion, meant that the lawsuit involved construction disputes, thereby triggering the arbitration provisions

4

of the Declaration. R.J. Back Parties adopted this motion. No ruling was made on the motion for reconsideration at that time. Over the next few months, Shoreline Association filed amended petitions, including a Third Amended Petition on June 7, 2024, which alleged, in part:

19. The bookkeeping inherited by Plaintiff from Defendants has been difficult (to impossible) to reconcile. And funds were missing from the Condo Association's bank account, or cannot be accounted for, from when Defendants were in control. Defendants made the books, records, and accounts inherited by the Condo Association so complicated that the Condo Association cannot assert a specific sum in this regard yet. In other words, there are discrepancies in the Condo Association dues and assessment from when Defendants were in control. And there were improper non-business related or personal expenses during Defendants' control that should be reimbursed or credited to the Condo Association's account.

20. On July 17, 2022, [sic] the Condo Association demanded that Defendant RJ Back's completion and remediation of punch list items. See Exhibit A. Defendant RJ Back failed to complete or remediate the punch-list.

21. During their control period, Defendants failed to maintain, repair, replace, complete, or restore the exterior waterproofing system. And the Condo Association has discovered that the exterior waterproofing system, for which one or more of Defendants were responsible, needs maintenance/repair/replacement/completion/restoration work in the approximate cost of at least $352,000. The Condo Association hereby demands prompt repair and restoration, if Defendants allege such demand has not already been made.

The petition contained similar allegations with respect to the foundation ($740,000), the pool deck ($52,000), the bulkhead ($375,000), the fire suppression system ($45,000), and the pools or the pools' equipment ($18,000). The petition alleged all

5

defendants violated various provisions of Chapter 82 of the Texas Property Code, including,

> 30. Defendants' Violations of Texas Property Code Section 82.163 ("Obligation to Complete and Restore") – This statute provides that Defendants, for the period of their control, are "subject to liability for the prompt repair and restoration, to a condition compatible with the remainder of the condominium, or any portion of the condominium affected by the condominium affected by the exercise of rights reserved pursuant to or created under this chapter." Despite the Condo Association's June 17, 2022 demand, Defendants have failed to promptly repair and restore the punch-list items. As a result of Defendants' failures to promptly repair and restore the punch-list items, the Condo Association has suffered damage, injury, or harm. Furthermore, the Condo Association demands prompt repair and restoration of the items described in paragraphs 21-26 above (e.g., at least, the exterior waterproofing system, foundation, pool deck, bulkhead, fire suppression system, and pools or the pools' equipment), as required by Tex. Prop. Code s. 82.163.

Attached as Exhibit A to the petition was a copy of a June 17, 2022, letter from Shoreline Association's counsel to R.J. Back, requesting completion of a "Punch List" containing 23 bullet points under the heading, "CONSTRUCTION/REMEDIATION."

On July 15, 2024, Beach Club Parties filed a Supplement to Motion to Reconsider Motion to Stay and Compel Arbitration in which they argue Shoreline Association's Third Amended Petition asserts construction disputes thereby triggering the arbitration provisions of the Declaration. This motion was adopted by R.J. Back Parties.

In August 2024, twenty-four days after the trial court's deadline to file amended or supplemental pleadings, Shoreline Association filed a Fourth Amended Petition. This version of the petition alleges, in part,

21. During their control period, Defendants failed to complete or allowed the deterioration of the exterior waterproofing system. And the Condo Association has discovered that the exterior waterproofing system, for which one or more of Defendants were responsible, needs maintenance/repair/replacement/completion/restoration due to incompletion or deterioration during Defendants' control period, unrelated to potential construction defects or potential design flaws in this system (i.e., not pertaining to construction or design as of yet). The Condo Association hereby demands prompt completion and restoration. The Condo Association suffered injury, harm, and damage as a result. The Condo Association is not yet alleging that these damages are a result of construction defects or design flaws of this system. The Condo Association is still investigating the possibility of construction defects or design flaws.

. . .

30. While Plaintiff served notice under Tex. Prop. Code s. 82.119, it is not alleging defect and design claims at this time. The purpose of that notice and the subsequent inspection are to allow Plaintiff to evaluate those claims at a later date.

31. Defendants' Violations of Texas Property Code Section 82.163 ("Obligation to Complete and Restore") – This statute provides that Defendants, for the period of their control, are "subject to liability for the prompt repair and restoration, to a condition compatible with the remainder of the condominium, or any portion of the condominium affected by the condominium affected by the exercise of rights reserved pursuant to or created under this chapter." Despite the Condo Association's June 17, 2022 demand, Defendants have failed to promptly complete the punch-list items. As a result of Defendants' failures to promptly complete the punch-list items, the Condo Association has suffered damage, injury, or harm – not pertaining to

7

construction defects or design flaws as of yet. Furthermore, the Condo Association demands prompt completion and restoration of the deteriorating items described in paragraphs 21-26 above, as required by Tex. Prop. Code s. 82.163.

The petition contains similar allegations that the defendants "failed to complete or allowed the deterioration of the fire suppression system." Regarding the foundation, the pool deck, the bulkhead and the pools, however, the petition initially alleges only that the defendants allowed their deterioration, not that they "failed to complete" them, but then the petition goes on to allege each of those structures "needs maintenance/repair/replacement/completion/restoration due to incompletion or deterioration during Defendants' control period, unrelated to potential construction defects or potential design flaws in this system (i.e., not pertaining to construction or design as of yet)." The petition also continues to demand "prompt completion and restoration" of each of those structures. Although the petition refers to the June 17, 2022, letter containing the punch list which "Defendants [allegedly] failed to promptly complete[,]" the letter is not attached as an exhibit.

Shoreline Association then filed a Response to Defendants' Motion to Reconsider, arguing that the petition had been amended to "clarify" that the lawsuit "is still a non-construction dispute" over the "books and records[,]" thereby "negat[ing] the grounds for the motion to reconsider[.]" Beach Club Parties filed a reply, arguing Shoreline Association's Fourth Amended Petition was filed after the

trial court's pleading deadline and without leave of court and still contained allegations of construction disputes.

The trial court signed an order denying the motion to reconsider, and Beach Club Parties filed this interlocutory appeal.

**Analysis**

*Jurisdiction*

An appeal may be taken from an interlocutory order denying a motion to compel arbitration. *Bonsmara Nat. Beef Co., LLC v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 390 (Tex. 2020); Tex. Civ. Prac. & Rem. Code Ann. §§ 51.016, 171.098. To perfect such an appeal, an appellant must file a notice of appeal within 20 days after the order denying arbitration is signed. Tex. R. App. P. 26.1(b). The statute does not authorize interlocutory appeal from the denial of a motion to reconsider a motion to compel arbitration. *See Nazareth Hall Nursing Ctr. v. Castro*, 374 S.W.3d 590, 594 (Tex. App.—El Paso 2012, no pet.) *Hydro Mgmt. Sys., LLC v. Jalin, Ltd.*, No. 04-09-00813-CV, 2010 Tex. App. LEXIS 3353, at *2 (Tex. App.— San Antonio May 5, 2010, no pet.) (mem. op.). Our opinion in *Wells Fargo Bank, N.A. v. Goldberg*, No. 09-10-00386-CV, 2011 Tex. App. LEXIS 1327 (Tex. App.— Beaumont Feb. 24, 2011, no pet.) (mem. op.), is also sometimes cited for this proposition, but that case was unique because when the trial court denied the motion to compel arbitration in June 2009, there was no statutory basis for interlocutory

9

appeal from such an order. After the statute was amended, the movant requested reconsideration and then appealed from the order denying reconsideration. We held, "Section 51.016 applies to an appeal initiated after September 1, 2009. We conclude that the statute does not make appealable an interlocutory order that merely declined a request to reconsider the June 2009 order." *Id*. at *6-7 (citation omitted). That said, we agree that a party who does not timely file an interlocutory appeal should not be able to create for itself second opportunity merely by filing a motion to reconsider and then appealing from the denial of that motion.

Because Beach Club Parties' appeal is based on the trial court's denial of a motion to reconsider, we invited the parties to present arguments regarding whether we have jurisdiction over this interlocutory appeal. Beach Club Parties responded by arguing their motion to reconsider, as supplemented in July 2024, is a new motion, distinct from its original motion to compel arbitration, because the supplement asserts new grounds based on new claims included in Shoreline Association's Third Amended Petition. Shoreline Association responded by arguing that its Third Amended Petition was superseded when it filed its Fourth Amended Petition, that the motion to reconsider cannot be considered a distinct motion to compel arbitration because it presents nothing new, and that Beach Club Parties failed to timely appeal from the denial of the original motion to compel arbitration.

It is the substance of a motion, not its title, that matters. *Id*. at *4. "We look to the substance of a plea for relief to determine the nature of the pleading, not merely at the form of title given to it." *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980) (citing Tex. R. Civ. P. 71) ("When a party has mistakenly designated any plea or pleading, the court, if justice so requires, shall treat the plea or pleading as if it had been properly designated."). As explained below, we construe Beach Club Parties' Motion to Reconsider Motion to Stay and Compel Arbitration, as supplemented on July 15, 2024, as a distinct motion to compel arbitration because it is not merely a request that the trial court reconsider its original ruling. Instead, it requests the court to consider – for the first time – operative facts which were not in existence when the court denied the original motion to compel arbitration.

As discussed below, whether arbitration may be compelled in any given case depends on whether the claims being asserted in the petition fall within the scope of a valid arbitration agreement. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). Therefore, the petition's allegations and the language of the arbitration agreement comprise the operative facts upon which the analysis of arbitrability depends. A significant change in either of these two components may give rise to new grounds for a new motion to compel arbitration which is distinct from a previous motion. For example, in *Lucchese, Inc. v. Solano*, 388 S.W.3d 343, 346 (Tex. App.— El Paso 2012, no pet.), the El Paso Court of Appeals held Lucchese's amended

11

motion to compel arbitration was not merely a motion to reconsider its original motion because the amended motion relied on a different arbitration agreement. Here, although the arbitration agreement remained the same, the petition was amended to include new claims potentially falling within the scope of the agreement. In each case, one of the components of the arbitrability analysis changed after the trial court initially denied arbitration.

To determine whether Beach Club Parties' motion to reconsider is distinct from its original motion to compel arbitration, we must consider each of Beach Club Parties' motions, along with the pleadings in existence at the time of each motion. Beach Club Parties' original motion to compel arbitration rested entirely on the argument that the claims in the original petition were "construction disputes" because they involved "construction" of the Declaration's language. Beach Club Parties' motion to reconsider was based entirely on the fact Shoreline Association served discovery focused on construction issues. In *Wells Fargo* we did not consider "the pursuit of discovery" to be a "change in circumstances" sufficient to distinguish the motion to reconsider from the original motion to compel arbitration. 2011 Tex. App. LEXIS 1327, at *4. Discovery requests do not define the nature of a party's claims; pleadings do. *See Murray v. O & A Express, Inc.*, 630 S.W.2d 633, 636 (Tex. 1982) ("The office of pleadings is to define the issues at trial."). But we need not decide whether Shoreline Association's interrogatories were sufficient to trigger the

12

Declaration's arbitration provision, because Beach Club Parties did not obtain a ruling on its motion to reconsider until after Shoreline Association had amended its pleadings to assert new claims.

When Shoreline Association filed a Third Amended Petition alleging claims not previously alleged in any of its previous petitions, Beach Club Parties' filed a July 2024 "Supplement" to its motion to reconsider, tracing the procedural history of the litigation, quoting extensively from Shoreline Association's Third Amended Petition – with emphasis on the new allegations – and arguing that since the amended petition includes claims for alleged construction defects, the trial court should compel arbitration and stay the litigation.

The arguments contained in the July 2024 "Supplement" were not made in the original motion to compel arbitration nor in the motion to reconsider, nor could they have been, because the petition at that time was confined to a dispute over whether various amendments to the Declaration were improperly adopted. Although Shoreline Association attempted to supersede its Third Amended Petition by filing a Fourth Amended Petition, it did so after the pleading deadline and without leave of court, and the Fourth Amended Petition still contains allegations which are significantly different from those contained in its original petition on file when the original motion to compel arbitration was denied. Whether these new allegations trigger the Declaration's arbitration provision was a matter for the trial court to

consider anew, regardless of its previous ruling on the original motion. Having determined, at least implicitly, that the new claims do not trigger the arbitration provision, the trial court's ruling is subject to interlocutory appeal under sections 51.016 and 171.098, both of which grant this Court jurisdiction to review the denial of motions to compel arbitration. Tex. Civ. Prac. & Rem. Code Ann. §§ 51.016, 171.098.

We conclude Beach Club Parties' Motion to Reconsider, as "Supplement[ed]" on July 15, 2024, should be treated as a distinct motion to compel arbitration because it is based on operative facts not in existence when the original motion was filed. Tex. R. Civ. P. 71. Because Beach Club Parties filed a notice of appeal within 20 days after the trial court signed the order denying the motion, we have jurisdiction to review the order under sections 51.016 and 171.098. *See* Tex. R. App. P. 26.1(b).

*Arbitrability*

In a single issue, Beach Club Parties argue the trial court erred in denying its motion and supplemental motion to reconsider its motion to compel arbitration. A party who seeks to compel arbitration must establish that the claims being litigated are within the scope of a valid arbitration agreement.[2] *Henry*, 551 S.W.3d at 115. Whether the claims fall within the scope of the arbitration provision is a question we

[2]No party challenges the validity of the Declaration's arbitration provision.

14

review de novo. *Id.*; *Sinclair Grp., Ltd. v. Haggblom*, 548 S.W.3d 40, 44 (Tex. App.—Beaumont 2018, no pet.). "In a de novo review, the trial court's decision is given absolutely no deference." *Tex. Petrochemicals LP v. ISP Water Mgmt. Servs. LLC*, 301 S.W.3d 879, 884 (Tex. App.—Beaumont 2009, no pet.). "In determining whether a claim falls within the scope of an arbitration agreement, we focus on the factual allegations of the complaint, rather than the legal causes of action asserted." *Prudential Sec. v. Marshall*, 909 S.W.2d 896, 900 (Tex. 1995). "Generally, if the facts alleged touch matters that are covered by, have a significant relationship to, are inextricably enmeshed with, or are factually intertwined with the contract that contains the arbitration agreement, the claims are arbitrable." *Bath Junkie Franchise, Inc. v. Hygiene, L.L.C.*, 246 S.W.3d 356, 366 (Tex. App.—Beaumont 2008, no pet.) (internal quotation marks and citations omitted).

The Declaration grants Beach Club the right, in its sole discretion, to compel arbitration of "construction disputes." Because the Declaration does not define "construction dispute," we give the phrase its ordinary meaning. *Dynegy Midstream Servs. v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009) ("We give contract terms their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning.").

In its brief, Shoreline Association asserts, "Construction typically consists of designing, engineering, and erecting a structure *from start to finish*." (Emphasis

15

added). Shoreline Association's Third Amended Petition alleges, "During their control period, Defendants *failed to* maintain, repair, replace, *complete*, or restore" the exterior waterproofing system, the foundation, bulkhead, the pool deck, the fire suppression system, and the pools or pool equipment. (Emphasis added). Attached to the petition is a letter containing a "punch list" wherein Shoreline Association's counsel lists multiple items under the heading "CONSTRUCTION/REMEDIATION[.]" The petition alleges "RJ Back *failed to complete* or remediate the punch-list." (Emphasis added).

Shoreline Association argues the Third Amended Petition was superseded, but even if we construe the trial court's ruling as implicitly granting leave for Shoreline Association to amend its pleading after the deadline, the Fourth Amended Petition continues to allege,

20. On July 17, 2022, the Condo Association demanded that Defendant RJ Back's completion of punch list items. Defendant RJ Back *failed to complete* the punch-list.

21. During their control period, Defendants *failed to complete* or allowed the deterioration of the exterior waterproofing system. And the Condo Association has discovered that the exterior waterproofing system, for which one or more of Defendants were responsible, *needs* maintenance/repair/replacement/*completion*/restoration *due to incompletion* or deterioration during Defendants' control period, unrelated to potential construction defects or potential design flaws in this system (i.e., not pertaining to construction or design as of yet). The Condo Association hereby *demands prompt completion* and restoration. The Condo Association suffered injury, harm, and damage as a result. The Condo Association is not yet alleging that these damages are a

16

result of construction defects or design flaws of this system. The Condo Association is still investigating the possibility of construction defects or design flaws.

> 31. Defendants' Violations of Texas Property Code Section 82.163 ("*Obligation to Complete* and Restore") – This statute provides that Defendants, for the period of their control, are "subject to liability for the prompt repair and restoration, to a condition compatible with the remainder of the condominium, or any portion of the condominium affected by the condominium affected by the exercise of rights reserved pursuant to or created under this chapter." Despite the Condo Association's June 17, 2022 demand, Defendants have *failed to promptly complete* the punch-list items. As a result of Defendants' *failures to promptly complete* the punch-list items, the Condo Association has suffered damage, injury, or harm – not pertaining to construction defects or design flaws as of yet. Furthermore, the Condo Association *demands prompt completion* and restoration of the deteriorating items described in paragraphs 21-26 above, as required by Tex. Prop. Code s. 82.163.

(Emphasis added). Identical allegations are made regarding the fire suppression system, and similar allegations are made regarding the foundation, the pool deck, the bulkhead and the pools or pool equipment. According to Shoreline Association's own definition, these are "construction disputes" because they allege Beach Club Parties did not finish what they started with respect to the design, engineering or erection of these structures. But even if Shoreline Association's brief did not define "construction" in terms of building a structure "from start to finish," we would still conclude that by alleging Beach Club Parties "failed to complete" various structures, the petition alleges claims which touch upon "construction," as that word is ordinarily understood. To allege that a party "failed to complete" a structure is to

17

allege the party did not properly construct the structure. When, as in this case, the other party denies such an allegation, there is a dispute over whether the structure was properly constructed; in other words, there is a "construction dispute."

We recognize the Fourth Amended Petition contains carefully drafted language asserting the alleged defects are "unrelated to potential construction defects or potential design flaws in this system (i.e., not pertaining to construction or design as of yet)" and that the "Association is not yet alleging that these damages are a result of construction defects or design flaws[,]" but our focus is on the substance of the factual allegations rather than any arguments, conclusions or characterizations contained in the pleading. "[A]rbitrability turns on the substance of a claim, not artful pleading." *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 190 (Tex. 2007).

We conclude the substance of Shoreline Association's live pleading alleges construction disputes falling within the Declaration's arbitration provision. And, although the pleading alleges alternative theories regarding Beach Club's responsibility for the various structures – such as alleged failure to maintain or repair conditions which were allowed to deteriorate during Beach Club's period of control – we conclude those alternate theories are also subject to arbitration because they are factually intertwined with the allegations that Beach Club failed to complete the construction of those structures. *See Bath Junkie*, 246 S.W.3d at 366. "Texas law favors the joint resolution of multiple claims to prevent multiple determinations of

18

the same matter." *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992). "Claims, even if otherwise not arbitrable, can become arbitrable when factually intertwined with arbitrable claims." *Tex. Petrochemicals*, 301 S.W.3d at 885; *see also Cielo Prop. Grp. LLC v. Mulcahy*, No. 03-18-00587-CV, 2019 Tex. App. LEXIS 5789, at *7-8 (Tex. App.—Austin July 11, 2019, pet. denied) (mem. op.) ("A court must submit the ancillary causes to arbitration if they are factually intertwined with the arbitrable causes."). We sustain Beach Club Parties' sole issue as to those claims.

However, it is unclear whether Shoreline Association's other claims are intertwined with the construction claims. On remand, the trial court is directed to determine whether Shoreline Association's claims regarding alleged invalidity of amendments to the Declaration, alleged use of the amendments to self-deal, alleged failure to produce books and records pursuant to Texas Property Code section 82.114, and alleged accounting issues regarding dues, assessments and payment of unrelated personal expenses, are to be included in the arbitration based on whether such claims are, or are not, intertwined with the construction disputes.

*Waiver*

"Once a party carries its initial burden of establishing the arbitration agreement's existence and shows the alleged claims fall within the agreement's scope, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration." *Worthington Mid-Rise Constr., Inc. v. RSL*

19

*Contractors, Inc.*, No. 09-12-00157-CV, 2012 Tex. App. LEXIS 6006, at *4 (Tex. App.—Beaumont July 26, 2012, no pet.) (mem. op.). In its brief, Shoreline Association argues Beach Club Parties waived arbitration by filing multiple motions for summary judgment and dismissal under Rule 91a, thereby "substantially invoking the judicial process[,]" and by waiting until trial was imminent before requesting a ruling on its motion to reconsider. *See* Tex. R. Civ. P. 91a.

As an affirmative defense, waiver must be "set forth affirmatively" in a pleading. *Id.* 94. Shoreline Association did not plead, and never asserted in response to any of Beach Club Parties' motions for arbitration, that Beach Club Parties waived arbitration. Therefore, Shoreline Association waived its affirmative defense of waiver and may not assert it for the first time on appeal. *Worthington*, 2012 Tex. App. LEXIS 6006, at *4.

*Stay Pending Arbitration*

The Texas Arbitration Act "require[s] courts to stay litigation of issues that are subject to arbitration." *In re Merrill Lynch Tr. Co.*, 235 S.W.3d at 195. "The stay applies only to the issue subject to arbitration if that issue is severable from the remainder of the proceeding." Tex. Civ. Prac. & Rem. Code Ann. § 171.025(b). Upon remand, the trial court is directed to stay the litigation of all construction disputes pending the outcome of arbitration. However, as indicated above, Shoreline Association's other claims may or may not be subject to the Declaration's arbitration

20

provision. "[I]ssues that are not the subject of arbitration need not be stayed until the arbitration is concluded." *Star Sys. Int'l v. 3M Co.*, No. 05-15-00669-CV, 2016 Tex. App. LEXIS 5367, at *9 (Tex. App.—Dallas May 19, 2016, no pet.) (mem. op.). Because the trial court denied arbitration in its entirety, it has not addressed whether to stay any non-intertwined claims pending the outcome of the construction disputes. "Generally, courts recognize that a trial court may stay litigation of non-arbitrable claims as a matter of its discretion to control its docket." *Chi. Bridge & Iron Co. (Del.) v. Delman,* No. 09-14-00468-CV, 2015 Tex. App. LEXIS 4077, at *8-9 (Tex. App.—Beaumont Apr. 23, 2015, no pet.) (mem. op.). Therefore, whether to stay any non-intertwined claims is left to the trial court's sound discretion, subject to further review by this Court as necessary.

*R.J. Back Parties*

After Beach Club Parties filed their opening brief, R.J. Back Parties filed a notice that they joined in the arguments presented in the brief. Shoreline Associates filed an objection asserting R.J. Back Parties were not parties to the appeal. R.J. Back Parties then filed a motion for leave to file a notice of appeal and join in the appeal previously filed by Beach Club Parties. Shoreline Association filed a response, arguing the motion was untimely since the deadlines for a notice of appeal and for a motion for extension of time to file a notice of appeal had expired months earlier.

21

We deny as untimely R.J. Back Parties' motion for leave to file a notice of appeal. Nevertheless, because R.J. Back Parties adopted Beach Club Parties' motion to reconsider and the July 2024 "Supplement," R.J. Back Parties are parties to the trial court's order which is the subject of this appeal. As a result, Beach Club Parties' timely filing of a notice of appeal invoked this Court's jurisdiction over R.J. Back Parties. *See* Tex. R. App. P. 25.1(b) ("The filing of a notice of appeal by any party invokes the appellate court's jurisdiction over all parties to the trial court's judgment or order appealed from."). Upon remand, the trial court is directed to include R.J. Back Parties in its order compelling arbitration.

**Conclusion**

Having sustained, in part, Beach Club Parties' sole issue, we reverse the trial court's order and remand this case to the trial court with instructions to enter an order, consistent with this opinion, compelling arbitration of all construction disputes and staying the litigation of any construction disputes pending the outcome of arbitration. On remand, the trial court is directed to determine whether Shoreline Association's claims regarding alleged invalidity of amendments to the Declaration, alleged use of the amendments to self-deal, alleged failure to produce books and records pursuant to Texas Property Code section 82.114, and alleged accounting issues regarding dues, assessments and payment of unrelated personal expenses, must be included in the order compelling arbitration, depending on whether any such

22

claims are intertwined with the construction disputes. Whether to stay the proceedings in any non-intertwined claims pending arbitration of the construction disputes is an issue we leave to the trial court's sound discretion, subject to further review by this Court as necessary.

REVERSED AND REMANDED.


KENT CHAMBERS
Justice

Submitted on April 29, 2025
Opinion Delivered May 29, 2025

Before Golemon, C.J., Wright and Chambers, JJ.

23