# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00289-CV

---

**Nutex Health Inc.; Nutex Health, LLC; and Tyvan, LLC, Appellants**

**v.**

**Kyle ER, LLC; Kyle Assets, LLC; and Micro Hospital EP, PLLC, Appellees**

---

**FROM THE 274TH DISTRICT COURT OF HAYS COUNTY
NO. 23-2458, THE HONORABLE JOE POOL, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellants Nutex Health Inc.; Nutex Health, LLC; and Tyvan, LLC (collectively, "Administrators") challenge the trial court's order denying their motion to compel arbitration. In the underlying lawsuit, appellees Kyle ER, LLC; Kyle Assets, LLC; and Micro Hospital EP, PLLC (collectively, "Hospital Companies"), who own a hospital, assert claims for breach of contract, conversion, and unjust enrichment/money had and received against the Administrators, who formerly performed administrative services for the hospital. Because we conclude that the trial court did not err in denying the motion to compel arbitration, we affirm the trial court's order.

## BACKGROUND

The underlying suit has a complex procedural history. It encompasses two separate disputes involving the Hospital Companies. The dispute underlying this appeal is

between the Administrators and the Hospital Companies over the alleged mismanagement of the hospital's administrative services. It arose after a prior dispute among the owners of the Hospital Companies over who controls those companies. To provide context for the Hospital Companies' dispute with the Administrators, we describe the prior dispute over control of the Hospital Companies in the chronology below.

**The Service Contracts Between the Hospital Companies and the Administrators**

The Hospital Companies provide emergency-care services in a hospital facility in Kyle, Texas. The hospital began operations in 2015. Kyle ER operates the hospital facility; Kyle Assets owns the facility and related real estate, and Micro Hospital provides medical services for the facility.

The Hospital Companies employed Nutex Health, LLC (Nutex) and Tyvan, LLC as third-party administrators to handle the day-to-day management and administration of the hospital facility.[1] From Kyle ER's inception in October 2014 through early December 2023, Nutex provided services for the hospital facility that included marketing, processing payroll for employees and physicians, accounting services and bill paying, maintaining books and records, human-resources management, and regulatory-compliance oversight. According to the Administrators, Nutex provided those services under a management-services agreement between Nutex and Kyle ER ("Nutex Health Service Contract"). Although this service contract is not part

---

[1] Nutex Health, Inc.is the publicly traded parent company of numerous entities, including companies that provide management and administrative services for emergency-care facilities in many states. The Hospital Companies sued it in its capacity as the parent company of Nutex Health, LLC and Tyvan, LLC. It is undisputed that the Hospital Companies have no service contract with Nutex Health, Inc. and that there is no arbitration agreement between those parties.

2

of the record, it is undisputed that any such contract does not contemplate arbitration of disputes between the parties.

From March 2018 through December 2023, Tyvan provided coding, billing, and collection services for the hospital facility. Kyle ER and Tyvan entered into the Tyvan Facility Coding, Billing, and Collections Agreement ("Tyvan Service Contract"). The Tyvan Service Contract does not contain an arbitration provision or otherwise contemplate arbitration of disputes between the parties. We collectively refer to the Tyvan Service Contract and the Nutex Service Contract as the "Service Contracts."

**A Dispute Arises Between Nutex's CEO and Other Members of the Hospital Companies**

Dr. Thomas Vo is the CEO and Chairman of Nutex Health, Inc. In 2021, Vo proposed a merger involving the exchange of shares of Nutex Health, Inc. with the membership interests of Kyle ER. Five of the eight members of Kyle ER agreed to the merger and traded some or all of their membership interests in exchange for Nutex Health, Inc. shares. The transaction was effective on April 1, 2022. As a result, Nutex Health, Inc. acquired 46.32% of Kyle ER, which included the 41.05% interest that Dr. Vo previously individually owned. Nutex Health Inc.'s ownership interest is held by Nutex Health Holdco, LLC. Nutex Health Holdco is a wholly owned subsidiary of Nutex Health, Inc. [2]

Dr. Donna Campbell, one of the members of Kyle ER and of the other two Hospital Companies who chose not to participate in the merger and retained her ownership of her membership interest in Kyle ER, sent a demand for the books and records of the three Hospital

_____

[2] Although Nutex Health Holdco is a member of Kyle ER, it is not an Administrator and thus, it is not a party to this appeal. In addition, the members who were not transferring their membership interests to Nutex Health Holdco voted to admit Nutex Health Holdco as an assignee but not as a full substituted member with voting rights.

Companies on May 24, 2023. She directed her demand to Vo as CEO of Nutex Health, Inc. and as Operations Manager and Tax Matters Member of the three Hospital Companies. Campbell's demand invoked various sections of the Kyle ER Company Agreement, the Kyle Assets Company Agreement, and the Micro Hospital Operating Agreement (collectively, "Hospital Company Agreements"), as well as various sections of the Texas Business Organizations Code.

Each Hospital Company Agreement has a dispute-resolution provision that requires all disputes related to the Company Agreement, its construction, or its breach to first be submitted to the LLC members collectively.[3] If a member concludes that the members are unable to resolve the dispute within ten days, the members must seek resolution through mediation under prescribed procedures. If mediation fails to resolve the dispute within forty days of the dispute-submission date, then the matter must be decided by arbitration conducted under the rules of the American Arbitration Association (AAA).[4]

On August 16, 2023, Campbell sent a letter to the members of the Hospital Companies, including Vo, informing all members of her document requests and her allegation that Nutex, on behalf of the Hospital Companies, had failed to provide documents in response to certain of her requests. She informed the members that she had no alternative but to submit the

---

[3] Each Company Agreement defines "dispute" or "controversy" slightly differently, but those differences are immaterial for purposes of this opinion.

[4] The specifics of the prescribed process slightly differ under the Micro Hospital Company Agreement, but it ultimately requires arbitration under the AAA rules if initial dispute-resolution efforts and mediation fail. Arguably, however, that Company Agreement does not constitute an agreement to arbitrate because that Company Agreement was never signed. Dr. Amanda Dupont, a member of the Hospital Companies, attested that the Micro Hospital Company Agreement has never been used to govern the Company. In addition, in December 2023, a majority of the Micro Hospital members passed a resolution in which they agreed that no governing documents had been executed, and thus, they believed that Texas Business Organizations Code Chapters 100 and 304 control Micro Hospital's governance.

4

dispute to the members under the relevant dispute-resolution sections of the Hospital Company Agreements. The record does not reflect that any action was taken to mediate this dispute.

On September 25, 2023, Campbell filed the underlying lawsuit, alleging her own individual claims against the Hospital Companies for breach of contract and an accounting, and seeking declaratory relief against the Hospital Companies that she is entitled to the requested documents. Campbell also alleged derivative claims on behalf of the Hospital Companies against the Administrators for breach of contract and an accounting, seeking specific performance of her demand for books and records and an order requiring an accounting from Nutex and Tyvan and enabling her to examine the requested documents and information.[5] In November 2023, the Administrators moved to abate the lawsuit and compel arbitration, asserting that Campbell, as a signatory to the Hospital Company Agreements, is bound by the terms of those agreements to arbitrate all disputes relating to those agreements. Campbell filed a motion to show authority, alleging that the Hospital Companies were being defended in the lawsuit by counsel for the Administrators without authority, based on her personal knowledge of her partners' objections to the Companies' being represented by the same counsel.

While those motions were pending, on December 3, 2023, some members of Kyle ER and Kyle Assets formally resolved to terminate "any and all contractual agreements" with the Administrators and to remove Vo as the Operations Manager and Tax Matters Member of the two companies. Those members of Kyle ER and Kyle Assets also voted to appoint Campbell and Amanda Dupont, MD, another owner and member of Kyle ER and Kyle Assets, as the new Operations Managers of those companies.

---

[5] Campbell initially included another entity referred to as "Nutex Health 2, Inc." as a defendant, but this entity was later dropped from her pleadings, and according to the Administrators, it does not exist.

5

On December 4, 2023, to enforce the resolutions, Kyle ER and Kyle Assets filed a cross-claim against the Administrators in the existing lawsuit brought by Campbell. Kyle ER and Kyle Assets obtained a temporary restraining order (TRO) from the district court that same day and posted the bond amount ordered by the court. The court ordered the Administrators to recognize the termination of their administrative services, provide all the books and records for Kyle ER and Kyle Assets within three days to Dupont or Campbell, and transfer financial control and access to all bank accounts and all financial-management or operations services to Dupont and Campbell.

On December 5, 2023, Micro Hospital also formally resolved to terminate "any and all contractual agreements" with the Administrators, and on December 6, 2023, the Hospital Companies amended their cross-claim to add Micro Hospital as a cross-plaintiff against the Administrators. The Hospital Companies alleged claims for breach of contract and an accounting and sought injunctive relief.

On December 11, 2023, Kyle ER and Kyle Assets filed an emergency motion for contempt for violation of the TRO, asserting that the Administrators had failed to comply with it. Kyle ER and Kyle Assets filed a supplement to the contempt motion on December 14 and set the contempt motion for the same hearing on December 18, 2023, when their temporary-injunction application was set. The parties subsequently agreed to pass the evidentiary hearing and submitted an agreed order.

Under the terms of the order agreed to by the Administrators, on December 21, 2023, the trial court ordered the Administrators to provide the Hospital Companies within 45 days the following information:

- all of Kyle ER and the hospital's books and records;

- access to all of the Hospital Companies' financial accounts used to operate the business (including certain specified accounts); and

- access to all financial management or operations services pertaining to the operation of the Hospital Companies' business, whether those be provided by software, third-party, web based, or otherwise.

The agreed order also enjoined the Administrators from taking action to communicate with the Hospital Companies' banks or to interfere with the Hospital's business with its banks.

On January 3, 2024, Campbell nonsuited her claims against all parties, which left pending only the Hospital Companies' claims against the Administrators for breaches of their Service Contracts.[6]

**Vo and Nutex Health Holdco Invoke the Hospital Company Agreements' Arbitration Clauses and File a Statement with AAA Seeking Arbitration of Their Claims Against Kyle ER and Micro Hospital; Nutex and Tyvan Also Seek Arbitration of Their Claims**

On December 22, 2023, Vo, Nutex Health Holdco, Nutex, and Tyvan (collectively, "claimants") submitted a statement of claims against Kyle ER and Micro Hospital to the AAA, invoking the arbitration clauses in their respective Hospital Company Agreements. The claimants asserted that Nutex's and Tyvan's claims are proper to bring in the arbitration even though Nutex and Tyvan are not signatories to the Hospital Company Agreements.

In their statement of claims, claimants Nutex Health Holdco, Nutex, and Tyvan seek declarations that the resolutions terminating the Service Agreements are void and that the Service Agreements are valid, binding, and in force. Nutex and Tyvan assert breaches of their contracts with Kyle ER and Micro Hospital. Nutex Holdco and Vo seek injunctive relief

---

[6] Campbell's nonsuit eliminated the only claims addressed in the Administrators' November 2023 motion to compel arbitration.

7

enjoining Kyle ER and Micro Hospital from effectuating the resolutions to terminate the Nutex and Tyvan contracts and transition to new service providers until a determination is made that those resolutions are valid.

On January 29, 2024, the parties participated in an all-day hearing in the arbitration on the claimants' request for emergency injunctive relief to prevent Kyle ER and Micro Hospital from transitioning services to new providers or otherwise effectuating the resolutions to terminate the Service Contracts. No order was issued granting Nutex and Tyvan emergency relief. Instead, the parties entered into an agreement that provided Kyle ER and Micro Hospital with information and access they had been denied by Nutex and provided Nutex with access to Kyle ER and Micro Hospital's financial information which Nutex asserted it needed to remain compliant with SEC regulations.

According to the Administrators, the arbitration has been stayed during the pendency of this appeal.

**The Administrators Move the Trial Court to Compel Arbitration of the Hospital Companies' Claims Against Them**

On February 22, 2024, the Administrators filed a new motion to compel arbitration in the trial court. Even though the Administrators are not signatories to the Hospital Company Agreements, relying on the equitable doctrine of direct-benefits estoppel, the Administrators argued that the Hospital Companies should be compelled to arbitrate their claims against the Administrators because the Hospital Companies sought relief under the Hospital Company Agreements. The Administrators contended that the Hospital Companies relied on the Hospital Company Agreements to terminate the Service Agreements and that the Hospital Company Agreements formed the basis for the Hospital Companies' request for a TRO and

temporary injunction as well as their claims for breach of contract and an accounting. In addition, the Administrators asserted that the Hospital Company Agreements govern the dispute over whether the resolutions ousting the Administrators are legally valid.

The Hospital Companies responded that the only claims remaining in the suit do not rely on the Hospital Company Agreements. Instead, the Hospital Companies allege claims for breach of contract, conversion, and unjust enrichment/money had and received, arising out of the administrative services provided to the Hospital Companies by Nutex and Tyvan under their oral and written Service Agreements. They argued that they do not plead for any relief related to any governing documents of the Hospital Companies.

On April 16, 2024, the trial court denied the Administrators' motion to compel arbitration. The Administrators filed this interlocutory appeal, invoking the Federal Arbitration Act (FAA) and the Texas Arbitration Act (TAA).[7] *See* Tex. Civ. Prac. & Rem. Code § 51.016 (allowing appeal under same circumstances allowed by FAA (9 U.S.C. § 16)); 9 U.S.C. § 16(a)(1)(C) (allowing immediate appeal from order denying application to compel arbitration); Tex. Civ. Prac. & Rem. Code § 171.098(a)(1) (allowing immediate appeal from order denying application made under TAA to compel arbitration). We granted the Administrators' unopposed motion for temporary relief and stayed the underlying litigation in the trial court until disposition of this appeal.

---

[7] The FAA and the TAA may both be applicable to an agreement, absent the parties' choice of one or the other. *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 98 n. 64 (Tex. 2011). The TAA is preempted by the FAA only to the extent that the TAA actually conflicts with the FAA. *Id.* at 97-98. The parties have identified no such conflict here.

**ANALYSIS**

In three issues, the Administrators contend that the trial court erred by denying their motion to compel arbitration. They assert that (1) the doctrine of direct-benefits estoppel requires parties to arbitrate claims that "presume the existence of the written agreement" containing an arbitration clause; (2) the Hospital Companies are estopped from denying their obligation to arbitrate because they obtained a direct benefit under the Hospital Company Agreements by obtaining the TRO and obtaining books and records and enforcing the resolutions terminating the Service Contracts; and (3) the Hospital Companies' remaining claims for breach of contract, conversion, and unjust enrichment/money had and received are based on allegations of mismanagement that depend on the Hospital Company Agreements and must be determined by reference to those contracts.

**Standard of Review**

We review a trial court's order denying a motion to compel arbitration for abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo. *Id.*

In general, a party seeking to compel arbitration must establish that (1) there is a valid arbitration agreement, and (2) the claims raised fall within that agreement's scope. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). Whether the claims in dispute fall within the scope of a valid arbitration agreement is a question of law, which we review de novo. *Henry*, 551 S.W.3d at 115.

**I.**  **Does the doctrine of direct-benefits estoppel require the Hospital Companies to arbitrate their claims against the Administrators?**

The Administrators admit that they are not signatories to the Hospital Company Agreements that contain arbitration provisions. Instead, they contend that the doctrine of direct-benefits estoppel requires the Hospital Companies to arbitrate their claims against the Administrators.

The Texas Supreme Court first addressed the doctrine of direct-benefits estoppel in the context of a nonsignatory plaintiff seeking to avoid arbitration. The court concluded that a nonsignatory "should be compelled to arbitrate a claim only if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provision"—it is not enough for the nonsignatory's claim to merely relate to the contract containing the arbitration provision. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 741. In a subsequent case, the Texas Supreme Court concluded that defendants, who were nonsignatories to the purchase contract with an arbitration provision, could compel arbitration of the claims against them because the plaintiff signatory's "right to recover and its damages depend[ed] on the agreement containing the arbitration provision." *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 307 (Tex. 2006). The Administrators urge that the Hospital Companies' claims against them similarly "must be determined by reference to" the Hospital Company Agreements, and therefore, they must be arbitrated. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) (orig. proceeding).

"Under both Texas and federal law, whether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim, not artful pleading." *See id.* at 131-32. To answer the ultimate question raised in the Administrators' first issue—does direct-benefits estoppel apply to the Hospital Companies' claims against the Administrators?—

11

we must first consider the Administrators' second and third issues: Did the Hospital Companies obtain a direct benefit under the Hospital Company Agreements by obtaining the TRO and obtaining books and records and enforcing the resolutions terminating the Service Contracts? And are the Hospital Companies' remaining claims (for breach of contract, conversion, and unjust enrichment/money had and received), which are based on allegations of mismanagement, required to be determined by reference to the Hospital Company Agreements?

## II. Did the Hospital Companies obtain a direct benefit under the Hospital Company Agreements by obtaining the TRO requiring Nutex and Tyvan to produce books and records and enforcing the resolutions terminating the Service Contracts?

The Administrators contend that the Hospital Companies obtained a direct benefit under the Hospital Company Agreements because those Agreements were the basis for their demand for books and records from the Administrators and for the enforcement of the resolutions "whose validity depends on the Hospital Agreements' voting provisions." We disagree on both points.

With regard to the books and records, the Administrators conflate the relief that Campbell initially sought and obtained under the Hospital Company Agreements on her own behalf with the different basis she asserted in her derivative claims on behalf of the Hospital Companies. In her petition, Campbell alleged that she made her individual request for the books and records of the Hospital Companies because as a member of those Companies she had the right to review those documents under the specified relevant sections of each Hospital Company Agreement and under Texas Business Organizations Sections 3.151, 3.152, and 101.501. As Campbell explained in her petition, although she made her books-and-records request to the Hospital Companies, "because of their administration of Kyle ER and Hospital, it was Nutex and

12

Tyvan that would have to provide the records sought." According to Campbell, "Nutex and Tyvan have failed and effectively refused to provide [her] with the records to which she is entitled as a member of [the Hospital Companies]," leading her to sue in her own right and derivatively on behalf of the Hospital Companies.

Contrary to the Administrators' argument, neither Campbell's derivative claims nor the Hospital Companies' later-filed cross-claims relied upon the Hospital Company Agreements as a basis for the requested relief. Campbell asserted the following in her derivative breach-of-contract claim:

> Nutex and Tyvan have agreed to perform certain administrative functions for [the Hospital Companies] in return for substantial compensation. However, Nutex and Tyvan's mismanagement of their record keeping has caused [the Hospital Companies] to be unable to meet their contractual commitments to Dr. Campbell concerning access to documents and information. This mismanagement constitutes breaches of contract by Nutex and Tyvan. Accordingly, Dr. Campbell seeks specific performance. Namely, Dr. Campbell is requesting, on behalf of [the Hospital Companies] that the Court order Nutex and Tyvan to deliver [the Hospital Companies'] books and records to Dr. Campbell.

In other words, Campbell relied on the Service Contracts as the bases for her derivative breach-of-contract claim against the Administrators on behalf of the Hospital Companies. Similarly, in the derivative claim for an accounting against the Administrators on behalf of the Hospital Companies, Campbell alleged that Nutex and Tyvan requested an order requiring them to provide an accounting of the Hospital Companies' business dealings and performance—in other words, an accounting of Nutex's and Tyvan's performance under the Service Contracts. Her request for an order enabling her to examine the documents and information provides the relevant provisions of the Hospital Company Agreements, not as a basis for ordering Nutex and Tyvan to provide her with the books and records, but as a basis for her entitlement to those

13

records, which the Hospital Companies could obtain only from Nutex and Tyvan because of their Service Contracts with Nutex and Tyvan.

In their initial cross-claim and application for injunctive relief, the Hospital Companies similarly alleged that Nutex and Tyvan had "agreed to perform certain administrative functions for [the Hospital Companies] in return for substantial compensation," and that their mismanagement of their recordkeeping had caused the Hospital Companies "to be unable to meet their contractual commitments to Dr. Campbell concerning access to documents and information." While the claim refers to the Hospital Companies' contractual commitments to Campbell, the basis for their request for their own records from Nutex and Tyvan was their Service Contracts with Nutex and Tyvan under which Nutex and Tyvan had agreed to perform administrative services, including recordkeeping. In addition, they alleged that "Nutex and Tyvan's mismanagement of the operations of [the Hospital Companies] has caused [the Hospital Companies] substantial damages." They also requested "an order requiring Nutex and Tyvan to give an accounting of [the Hospital Companies'] business dealings and performance." Again, the Service Contracts, not the Hospital Company Agreements, under which Nutex and Tyvan had agreed to perform administrative services, are the basis for the requested relief.

Also, contrary to the Administrators' argument, neither the Hospital Companies' request for injunctive relief nor the TRO or the agreed injunctive order relied on the Hospital Company Agreements as a basis for the relief granted. Instead, the Hospital Companies requested and the trial court ordered that Nutex and Tyvan must turn over the Hospital Companies' books and records and access to their financial accounts and operations services—all of which Nutex and Tyvan had possession of only because of their role in providing administrative services under the Service Contracts. The trial court did not need to refer to the

14

Hospital Company Agreements (which Nutex and Tyvan are not parties to) to determine that Nutex and Tyvan should be required to turn over to the Hospital Companies their own books and records and access to their own financial accounts and operations services. The Tyvan Service Contract (the only Service Contract in the record) contains provisions establishing the following:

- Kyle ER is the party responsible for all health-care services.

- All patient records belong to Kyle ER.

- Kyle ER granted Tyvan access to its bank account only for purposes of the contract, including the deposit of all fees collected by Tyvan.

- Tyvan could use Kyle ER's information system to perform its duties under the Contract, but the information system belongs to Kyle ER.

The trial court did not need to refer to the Hospital Company Agreements to determine to which entities the books and records, financial accounts, and operations systems belong.

As for the provisions of the TRO and agreed order requiring Nutex and Tyvan to immediately recognize the Hospital Companies' termination of their services, those provisions are also based on the Service Contracts, not the Hospital Company Agreements. The Tyvan Service Contract provides that the Contract may be terminated either on an agreed date, or if terminated without cause, with 30 days' notice, but the Hospital Companies pleaded that they were terminating the contracts because of mismanagement. Thus, the trial court could determine that the terminations should be enforced as effective immediately by reviewing the relevant Service Contract provision, which does not require notice for termination with cause. We conclude that none of the Hospital Companies' requested relief required reference to the Hospital Company Agreements.

15

The Administrators also argue that direct-benefits estoppel should apply to their dispute with the Hospital Companies because "[t]he members of each of the three Hospital entities attempted to pass resolutions terminating the service agreements with Administrators," by invoking "voting rights spelled out in those agreements to obtain the benefit of terminating the Administrators," and thus, the *members* obtained a direct benefit under the Hospital Company Agreements. Although the Administrators argue that "[t]hose voting rights lie at the center of the parties' ongoing dispute," that dispute is not a dispute between the parties to this lawsuit—the Hospital Companies and the Administrators. The only claims at issue in this lawsuit are the Hospital Companies' claims against the Administrators for breach of contract, conversion, and unjust enrichment/money had and received, as discussed in the next section.

Because we conclude that the Hospital Companies did not obtain books and records and enforcement of the resolutions immediately terminating the Service Contracts by reference to the Hospital Company Agreements, but instead by reference to the Service Contracts, we overrule the Administrators' second issue.

III.    **Must the Hospital Companies' remaining claims, which are based on allegations of mismanagement, be determined by reference to the Hospital Company Agreements?**

In their third issue, the Administrators argue that the Hospital Companies' claims in their live pleading, seeking only monetary damages, must be arbitrated because those claims "depend on and refer to the Hospital [Company] Agreements." The Administrators contend that the Hospital Companies must refer to the Hospital Company Agreements to prove that the Administrators "mismanaged operations, have failed to keep and make available books and records, and have failed to bill and collect payment for services provided" and that they have cost the Hospital Companies "millions in revenue and unjustified expenses," as the Hospital

16

Companies allege. Specifically, the Administrators assert that "[t]o determine who has the right to keep the books and records and whether they are kept properly," requires reference "to the recordkeeping requirements of the Hospital [Company] Agreements." They do not identify what provisions of the Hospital Company Agreements that they assert would govern this claim. The Administrators further assert that the Hospital Companies' claims about the Administrators' alleged mismanagement of the Hospital Companies' business "necessarily exist only because of the Hospital [Company] Agreements and must be determined by reference to those contracts." Again, the Administrators do not identify any provisions of those Agreements that would govern the Hospital Companies' claims. Finally, the Administrators assert that they will rely on a provision in the Hospital Company Agreements to prove that they may not be held liable for the Hospital Companies' claims. We address each of these arguments in turn.

### A. Claims related to recordkeeping and retention of books and records

We explained above that the Hospital Companies' claims related to the Administrators' alleged improper retention of the Hospital Companies' books and records and alleged mismanagement of their recordkeeping duties are claims brought under the Service Contracts. Those Service Contracts expressly provide that the books and records at issue are the Hospital Companies' property. A claim arising under the Hospital Company Agreements would be a claim involving a member seeking those books and records from the Hospital Companies, not a claim by the Hospital Companies themselves against their third-party administrative-service providers, who are not members of the Hospital Companies. The trial court does not need to refer to the Hospital Company Agreements to determine who owns the books and

17

records, accounts, and operating systems—the ownership claims alleged by the Hospital Companies may be determined by reference only to the Service Contracts.[8]

### B.     Other claims of alleged mismanagement

The Hospital Companies' other claims of alleged mismanagement will require the Administrators to dispute those allegations of mismanagement, including the allegations that billing and collections were not timely or properly done and that certain expenses and fees were improperly assessed against the Hospital Companies.  The Administrators contend that "[c]laims about the management of the Hospital's business necessarily exist only because of the Hospital [Company] Agreements and must be determined by reference to those contracts."  As noted above, the Administrators fail to identify any provisions of the Hospital Company Agreements that would govern these claims.  In essence, they argue that the Hospital Company Agreements govern these claims because the validity of the December 2023 resolutions that authorized termination of the Service Agreements and suit against the Administrators must be determined by reference to those Agreements.  We disagree that the validity of those resolutions is at issue in this suit.

The Administrators argue in their reply brief that the Hospital Companies are only able to bring these claims because of the change in management control after the December 2023

---

[8] The Administrators contend that the "TRO dispute" is still a live dispute, arguing that even though they consented to the Agreed Order after the TRO had required them to provide the Hospital Companies with books and records and access to financial accounts and operating systems, the Administrators did not agree that the Hospital Companies properly terminated their Service Contracts.  Whether that termination was effective under the terms of the Service Contracts may be determined by reference only to the Service Contracts.  The separate issue of whether the Hospital Companies had legal authority to terminate the Service Contracts is not at issue in this suit, as discussed below in connection with our discussion of the Hospital Companies' other claims of mismanagement.

resolutions and that Dupont and Campbell had to prove their standing to act on behalf of the Hospital Companies, which put the validity of those December 2023 resolutions at issue. The Administrators therefore urge that "[w]hether the Hospital Resolutions are valid remains to be decided in this lawsuit," but the Administrators have not in fact challenged the validity of those resolutions in this lawsuit. Instead, Vo and the various Nutex entities, including the Administrators, filed the pending AAA arbitration to challenge the validity of the December 2023 resolutions, and thus, to challenge the authority of Dupont and Campbell granted by the December 2023 resolutions to terminate the Service Contracts and bring claims against Nutex and Tyvan.

While the Administrators imply that the standing of Dupont and Campbell is at issue, Dupont and Campbell are not parties to this suit—the Hospital Companies are the parties, and their standing or capacity to bring claims under the Service Contracts against the Administrators is not at issue. In this suit, the Administrators have not challenged the *Hospital Companies'* standing or legal authority to sue the Administrators. *See, e.g.*, *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848-49 (Tex. 2005) ("A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." (quoting *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996))). To the extent that they argue that the Hospital Companies lack legal authority to sue them, "a challenge to a party's capacity must be raised by a verified pleading in the trial court." *Id.* at 849. The Administrators have not filed such a pleading.[9] And they have not

---

[9] Although the Hospital Companies assert that the Administrators lack standing to assert that "the Hospital Companies lacked corporate authority to make the internal decision to

19

asserted that the Hospital Companies lack a justiciable interest in the breach-of-contract and other claims for damages that the Hospital Companies allege.

We conclude that the Administrators have not shown that the Hospital Companies' claims for monetary relief "arise[ ] solely from the [Hospital Company Agreements] or must be determined by reference to [them]." *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 528 (Tex. 2015) (quoting *In re Weekley Homes*, 180 S.W.3d at 132). Instead, the substance of those claims arises from the Administrators' obligations to the Hospital Companies under the Service Contracts. *See id.* at 529 (concluding plaintiff's suit was for breach of separate contracts with various service providers; "the fact that the claims would not have arisen but for the existence of the general contract is not enough to establish equitable estoppel"). The Hospital Companies' claims against the Administrators do not seek a direct benefit under the Hospital Company Agreements; they seek direct benefits under the Service Contracts. *See id.*

### C.    The Administrators' assertion of nonliability

The Administrators also assert that direct-benefits estoppel should apply because they intend to rely on a provision in the Hospital Company Agreements to prove that they may not be held liable for the Hospital Companies' claims. A provision in the Kyle ER Agreement provides that

terminate their contract, or to sue them for breach of their internal agreements," we need not resolve the issue of the Administrators' standing here because the Administrators have not pleaded a challenge to the validity of the resolutions in this lawsuit. *See* Tex. R. App. P. 47.1.

To the fullest extent permitted by the TBOC, no Person who is or was a Company Functionary will be liable to the Company or any Interest Holder or any of their respective Affiliates as a result of or in connection with any actions or omissions with respect to the Company or any Interest Holder on the part of that Company Functionary in his or her capacity as such, whether liability is based on any claim of breach of fiduciary duty or other claims or bases, if that Company Functionary: (a) conducted himself or herself in good faith; (b) exercised the care that a reasonably prudent person in like position would exercise under similar circumstances; and (c) reasonably believed that his or her conduct was in the best interests of the Company.[10]

The Administrators assert that because they seek to prove their "nonliability" by reference to this provision in the Hospital Company Agreements, they can compel arbitration of the Hospital Companies' suit.

The cases that have applied the nonliability concept to require arbitration under the doctrine of direct-benefits estoppel have involved disputes that required reference to the contract with an arbitration clause. For example, in *In re Vesta Insurance Group*, the Texas Supreme Court determined that a claim for tortious interference with a contract "between a signatory to an arbitration agreement and agents or affiliates of the other signatory arise[s] more from the contract" than from the general obligation imposed by law not to interfere with existing contracts, and fall[s] on the arbitration side of the scale," meaning that the nonsignatories could compel arbitration. 192 S.W.3d 759, 761-62 (Tex. 2006) (per curiam) (explaining that because only "a stranger to a contract" can be liable for tortious interference, "*nonliability* arises from

---

[10] The Kyle ER Agreement defines "Company Functionary" as "any Member, Delegate of the Company or any Company Representative." The Agreement defines "Company Representative" as "any Person who is or was an employee, agent, attorney, accountant, manager, property manager, consultant or other role in providing authorized services on behalf of the Company, or who is or was serving at the request of the Company as a director, officer, trustee, employee, agent or similar functionary of another foreign or domestic corporation, trust, partnership, limited liability company joint venture, sole proprietorship, employee benefit plan or other enterprise."

connections with the contract"); *see also Lennar Homes of Tex. Land & Constr., Ltd. v. Whiteley*, 672 S.W.3d 367, 378-79 (Tex. 2023) (determining that nonsignatory subsequent purchaser of home was required to arbitrate claims against builder for alleged construction defects under direct-benefits estoppel in part because builder could prove nonliability for implied warranties that were purchaser's basis for suit if contract's express warranty covered claim).

In both of those cases, the plaintiff's claims made consideration of the contract containing the arbitration clause central to the defense. In contrast, in this case, as discussed above, the Hospital Companies' breach-of-contract claim and other claims arise solely from the Service Contracts, and do not require reference to the Hospital Company Agreements. Whether the Administrators breached the Service Contracts or are liable for conversion or unjust enrichment may be determined solely by comparing their obligations under the Service Contracts to their performance or lack of performance of those obligations. These types of claims do not implicate the provision in the Kyle ER Agreement, which appears to limit liability for acts of corporate discretion that might give rise to claims for breach of fiduciary duties or negligence. As the Administrators point out, it memorializes a business-judgment-rule defense. *See Sneed v. Webre*, 465 S.W.3d 169, 178 (Tex. 2015) (explaining that business-judgment rule "generally protects corporate officers and directors, who owe fiduciary duties to the corporation, from liability for acts that are within the honest exercise of their business judgment and discretion"). The Administrators do not explain how this provision could excuse them from liability for breach-of-contract, conversion, or unjust-enrichment claims. On these facts, given that the provision does not appear to apply to the claims alleged against them, we decline to hold that the Administrators may compel arbitration based on their invocation of a limitation-of-liability

22

provision in an internal company agreement to which they are not signatories and to which no reference is otherwise required to determine the claims against them.

Because we conclude that the Hospital Companies' remaining claims (and the Administrators' assertion of nonliability) may be determined without reference to the Hospital Company Agreements, we overrule the Administrators' third issue.

Neither the Hospital Companies' initial claims for injunctive relief to obtain possession of their books and records and access to their financial accounts and operating systems nor their remaining claims for monetary relief require reference to the Hospital Company Agreements or resolution of the counterclaims already in arbitration about the propriety of the management change. Accordingly, we conclude that the trial court did not abuse its discretion by determining that the doctrine of direct-benefit estoppel does not apply to compel arbitration. We overrule the Administrators' first issue.

## CONCLUSION

Having held that the trial court did not abuse its discretion by denying the Administrators' motion to compel arbitration, we affirm the trial court's order.

_____

Gisela D. Triana, Justice

Before Justices Triana, Kelly, and Theofanis

Affirmed

Filed: May 8, 2026

23